**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHERRY L. BODNAR, on Behalf of herself and All Others Similarly Situated,** | |
| **Plaintiff,** | **Case No. 5:14-cv-03224-EGS** |
| **vs.** | |
| **BANK OF AMERICA, N.A.,** | |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 2

    A.  History of Settlement Negotiations ............................................................... 3

III.  THE SETTLEMENT AGREEMENT ..................................................................... 5

    A.  The Class ........................................................................................................ 6

    B.  Monetary Relief for the Class ....................................................................... 6

    C.  Class Release ................................................................................................. 6

    D.  The Notice Program ...................................................................................... 6

    E.  Settlement Administration ............................................................................. 8

    F.  Allocation of the Settlement Fund ................................................................ 8

    G.  Distribution of the Settlement Fund .............................................................. 9

    H.  Class Representative Service Award .............................................................. 9

    I.  Attorneys' Fees and Costs ........................................................................... 10

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............. 10

    A.  The Proposed Settlement is a Result of Vigorous, Informed,
       Arm's Length Negotiations .......................................................................... 12

    B.  Because Discovery Was Nearly Complete, The Stage of This Case
       Supports Preliminary Approval .................................................................... 14

    C.  The Proposed Plan of Allocation Treats Class Members Fairly ................... 14

    D.  The Proposed Settlement is Well Within the Range of Possible Approval. ................. 16

    E.  Plaintiff and the Class Faced Significant Risk in This Complex Litigation. ................ 18

V.  THE PROPOSED FORM AND METHOD OF CLASS NOTICE
    SATISFY DUE PROCESS ................................................................................... 19

VI.  THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY
    CERTIFIED FOR SETTLEMENT PURPOSES .................................................. 23

    A.  The Class Satisfies the Requirements of Rule 23(a). .................................... 24

       1.  Numerosity ................................................................................ 24

       2.  Commonality ............................................................................ 25

       3.  Typicality ................................................................................. 26

       4.  Adequacy of Representation ..................................................... 27

   B.  Rule 23(b) Factors ............................................................................ 28

       1.  Common Questions of Law and Fact Predominate
           Over Individual Questions ....................................................... 28

       2.  Superiority ................................................................................ 29

VII.   CONCLUSION ........................................................................................ 300

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ....................................................................................... 20, 24, 28-29, 30

*Baby Neal v. Casey,*
43 F.3d 48 (3d Cir. 1994) ............................................................................................... 26

*Berkson v. Gogo LLC,*
___ F. Supp. 3d ____, No. 14-CV-1199, 2015 WL 7960042 (E.D.N.Y. Dec. 4, 2015) .......... 22

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3d Cir. 2013) ........................................................................................... 14

*Danieli v. IBM,*
No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ........................................... 15

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010) ........................................................................................... 12

*Eisen v. Carlisle & Jacqueline,*
417 U.S. 156 (1974) ...................................................................................................... 20

*Gates v. Rohm & Haas Co.,*
248 F.R.D. 434 (E.D. Pa. 2008) ...................................................................................... 13

*Georgine v. Amchem Prods., Inc.,*
83 F.3d 610 (3d Cir. 1996) ............................................................................................. 27

*Guy v. Casal Institute of Nevada, LLC,*
No. 13-cv-02263, 2014 WL 1899006 (D. Nev. May 12, 2014) ............................................. 23

*Hanlon v. Palace Entm't Holdings, LLC,*
No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ....................................................... 22

*In re Aetna Inc. Secs. Litig.,*
No. Civ. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 14, 2001) ....................................... 17

*In re Automotive Refinishing Paint Antitrust Litig.,*
MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ........................................... 11, 13

*In re CIGNA Corp. Sec. Litig.,*
No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) .................................................. 12

*In re Cmty. Bank of No. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
 418 F.3d 277 (3d Cir. 2005) ........................................................................... 29

*In re Elec. Carbon Prods. Antitrust Litig.*,
 447 F. Supp. 2d 389 (D.N.J. 2006) ................................................................. 14

*In re Gen. Instrument Secs. Litig.*,
 209 F. 2d 423 (E.D. Pa. 2001) ........................................................................ 17

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*,
 55 F.3d 768 (3d Cir. 1995) .................................................................... 10-11, 14

*In re Hydrogen Peroxide Antitrust Litig.*,
 552 F.3d 305 (3d Cir. 2008) ........................................................................... 28

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
 194 F.R.D. 166 (E.D. Pa. 2000) ...................................................................... 19

*In re Linerboard Antitrust Litig.*,
 292 F. Supp. 2d 631 (E.D. Pa. 2003) .............................................................. 14

*In re Plastic Cutlery Antitrust Litig.*,
 No. 96-cv-728, 1998 WL 135703 (E.D. Pa. Mar. 20, 1998) ............................ 26

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
 No. 3:03-MDL-1556, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) ................ 28

*In re Processed Egg Prods. Antitrust Litig.*,
 284 F.R.D. 249 (E.D. Pa. 2012) ................................................................. 23, 27

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................... 11

*In re Ravisent Techs., Inc. Secs. Litig.*,
 No. Civ. A. 00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............. 17

*In re TD Ameritrade Account Holder Litig.*,
 No. C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) .............. 23

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) .................................................... 11, 12, 25, 27, 29

*Jackson v. Se. Pa. Transp. Auth.*,
 260 F.R.D. 168 (E.D. Pa. 2009) ...................................................................... 24

*Johnston v. HBO Film Mgmt., Inc.*,
 265 F.3d 178 (3d Cir. 2001) ......................................................................... 28

*Kolinek v. Walgreen Co.*,
 ___ F.R.D. ____, No. 13 C 4806, 2015 WL 7450759 (N.D. Ill. Nov. 23, 2015) .................... 22

*Lane v. Facebook, Inc.*,
 No. C 08-3845 RS, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ......................................... 23

*Lazy Oil Co. v. Wotco Corp.*,
 95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................................................................... 17

*Lenahan v. Sears, Roebuck & Co.*,
 No. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006).......................................................... 16

*Marcus v. BMW of North America, LLC*,
 687 F.3d 583 (3d Cir. 2012)............................................................................ 14

*Maywalt v. Parker and Parsley Petroleum Co.*,
 67 F.3d 1072 (2nd Cir. 1995)......................................................................21-22

*McCall v. Drive Fin. Servs., L.P.*,
 236 F.R.D. 246 (E.D. Pa. 2006) ...................................................................... 28

*Mehling v. New York Life Ins. Co.*,
 246 F.R.D. 467 (E.D. Pa. 2007) ...................................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ................................................................................. 23

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 259 F.3d 154 (3d Cir. 2001)............................................................................ 26

*Nichols v. SmithKline Beecham Corp.*,
 No. Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005).......................................... 17

*Noll v. eBay, Inc.*,
 309 F.R.D. 593 (N.D. Cal. 2015) ..................................................................... 22

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) ................................................................................. 23

*Reilly v. Tucson Elec. Power Co.*,
 512 U.S. 1220 (1994) ................................................................................ 22

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .................................................................. 24

*Sullivan v. D.B. Inv., Inc.*,
   667 F.3d 273 (3d Cir. 2011) (*en banc*) ......................................... 10, 23-24

*Thomas v. NCO Fin. Sys.*,
   No. 00–5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ...................... 11

*Torres v. Gristede's Operating Corp.*,
   No. 04-3316, 2010 WL 2572937 (S.D.N.Y. Jun. 1, 2010) ...................... 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993), *cert. denied sub nom.* ................................ 22

**Other Authorities**

Alba Conte & Herbert Newberg,
   *Newberg on Class Actions* (4th ed. 2002) ............................. 11, 13, 26, 28

7A Wright, Miller, & Kane 518-19 ............................................................ 28

Manual for Complex Litigation (Fourth) (2004) ............................. 11, 19, 23

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................. 24

Fed. R. Civ. P. 23(b) ........................................................................... 24, 29

Fed. R. Civ. P. 23(c) ................................................................................. 20

Fed. R. Civ. P. 23(e) ........................................................................... 10, 20

# I. INTRODUCTION

Plaintiff Sherry Bodnar, on behalf of herself and the proposed Class defined below, respectfully submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement. For the reasons set forth below, the proposed settlement agreement ("Settlement") is fair, reasonable and adequate. The Settlement is the product of arm's length negotiations between Plaintiffs' Interim Lead Counsel ("Class Counsel") and Defendant, Bank of America, N.A. ("Bank of America", or "Bank"). The Court should grant preliminary approval because the $27.5 million Settlement provides substantial monetary relief to the Class, as well as meaningful prospective relief. As explained below, the terms of the Settlement are well within the range of reasonableness and are consistent with applicable case law. Indeed, the Settlement is an excellent result for the class of Bank of America checking account holders defined in the Settlement Agreement (the "Settlement Class") and easily satisfies all Third Circuit criteria for preliminary settlement approval.

In this case, Plaintiff challenges Defendant's assessment and collection of Overdraft Fees on certain debit card transactions authorized when sufficient funds were available to cover the transaction. Plaintiff claims Bank of America breaches the contract it has with checking accountholders, violates various common law duties, and violates the Pennsylvania consumer protection statute. This robust settlement compensates precisely the consumers that Plaintiff alleges were harmed by the alleged misconduct—accountholders who have been identified by recourse to the Bank's precise business records. The Settlement provides real benefits to almost three million Bank of America accountholders. Importantly, the settlement provides that there is no reverter of any portion of the $27.5 million Settlement amount to Bank of America. As

1

explained fully below, Plaintiff has established all necessary prerequisites for preliminary approval of the Settlement.

First, the Settlement provides excellent relief to Class Members, who will be compensated in *pro rata* amounts from the Net Settlement Fund, without having to take any action. Second, Bank of America will provide a new, separate disclosure to current account holders to clarify the debit card posting practices that gave rise to this litigation. Third, the Settlement calls for an exhaustive notice effort that will allow Class Members to evaluate the fairness of the Settlement on their own. In the face of certain risks discussed below, Plaintiff's $27.5 million recovery is outstanding—and merits Preliminary Approval.

## II. BACKGROUND

Class Counsel began investigating potential claims against Bank of America regarding debit card posting practices in late 2013. Declaration of Hassan A. Zavareei ("Zavareei Decl.," attached hereto as Exhibit A), ¶ 3. Class Counsel expended significant resources researching and developing the legal claims at issue in this case. *Id.*

On June 6, 2014, Plaintiff filed a Class Action Complaint seeking monetary damages, restitution and declaratory relief from Bank of America based on its alleged unfair and misleading assessment and collection of Overdraft Fees on certain debit card transactions authorized when sufficient funds were available to cover the amount of authorization. Dkt. 1.

On August 1, 2014, Bank of America filed a Motion to Dismiss the Complaint. Dkt. 18. On August 22, 2014 Plaintiff Bodnar filed her Response to the Motion to Dismiss. Dkt. 22. On September 5, 2014, Bank of America filed its Reply in support of its Motion to Dismiss. Dkt. 24.

On September 23, 2014, the Court conducted a lengthy oral argument on the Motion to Dismiss. On October 15, 2014, the Court issued an order denying the Motion to Dismiss in its

entirety. Dkt. 30. On November 24, 2014, Bank of America filed its Amended Answer and Affirmative Defenses to the Complaint. Dkt. 32.

On January 9, 2015, Tycko & Zavareei LLP moved the Court to be named Interim Lead Class Counsel of the consolidated litigation. Dkt. 33. This Court granted the motion on January 15, 2015. Dkt. 34.

Over the next nine months, the Parties vigorously litigated the case and engaged in extensive discovery efforts. Zavareei Decl., ¶ 6. The parties served and exchanged written discovery, including interrogatory responses. *Id.*, ¶ 7. Plaintiff requested, received, and reviewed over 50,000 pages of documents. *Id.* That document production was in response to three separate sets of document requests. *Id.* Plaintiff deposed five separate Bank of America employees, in San Francisco, CA, Worcester, MA, and Charlotte, NC. Two depositions were Rule 30(b)(6) depositions. *Id.*, ¶ 8. In addition, Plaintiff issued four third-party subpoenas, and worked with the recipients of those subpoenas to attain relevant documents. *Id.* In addition, Defendant deposed Plaintiff Bodnar in Allentown, PA. *Id.*, ¶ 17.

Based on what she learned in this extensive discovery effort, Plaintiff filed, on August 24, 2015, an Amended Complaint that included new allegations. Dkt. 51. On September 30, 2015, Bank of America filed a Motion to Dismiss the Second Amended Complaint. Dkt. 53. Plaintiff was in the process of briefing her opposition to the Second Motion to Dismiss when the Parties reached an agreement in principle to resolve the Action. Zavareei Decl., ¶ 9.

**A. History of Settlement Negotiations**

Settlement discussions began in early 2015. Zavareei Decl., ¶ 10. At that time, Bank of America provided Plaintiff confidential, aggregate information regarding its revenue for Overdraft Fees on consumer deposit transactions authorized and approved when sufficient funds were

available to cover the amount of authorization, as well as other information, including account disclosures used by Bank of America during a multi-year period of time.

On February 12, 2015, Class Counsel traveled to New York and met with counsel for Bank of America to meet and confer on discovery issues and to begin settlement discussions. Zavareei Decl., ¶ 10. Then, on March 16, 2015, the Parties attended a mediation session before the Honorable Carol Sandra Moore Wells of the Eastern District of Pennsylvania in Philadelphia, Pennsylvania. *Id.*, ¶ 11. The Parties made some initial progress, but the mediation did not result in an agreement to settle the action. *Id.* Judge Wells remained involved as the Parties continued settlement discussions.

On June 15, 2015, with Judge Wells' permission, the Parties attended a second mediation with a nationally respected mediator, retired federal judge Layn Phillips, at his office in California. That mediation resulted in further progress, but also did not result in a settlement. Zavareei Decl., ¶ 12. However, for the next several months while the litigation advanced, Judge Phillips continued to facilitate discussions between the Parties, in an attempt to resolve the litigation. *Id.*

In October, 2015, and after many months of on-and-off, arm's length, good faith discussions, the Parties reached an agreement on the material terms of a settlement and signed a Binding Term Sheet, which memorialized, subject to negotiation and execution of the Agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiff and the Settlement Class Members (defined below) in exchange for Bank of America's agreement to pay the sum of Twenty Seven Million Five Hundred Thousand Dollars ($27,500,000.00) to create a common fund for the benefit of the Settlement Class, as further detailed below. Zavareei Decl., ¶ 13.

However, the Parties were unable to reach final agreement on all terms of a Settlement Agreement.  *Id.*  Specifically, the Parties were unable to agree on a plan for allocation of the Settlement Fund to Class Members and sought guidance from Magistrate Judge Wells.  *Id.*  Accordingly, the parties re-engaged Magistrate Judge Wells for help in resolving remaining disagreements, and reconvened with Judge Wells on December 17, 2015.  Zavareei Decl., ¶ 14. The session was productive, and on January 13, 2016, the Parties were able to reach final agreement on the Settlement Agreement—including the plan of allocation—now before the Court. *Id.*

As is evident from the foregoing, the Settlement Agreement involved extensive and protracted negotiations that involved Magistrate Judge Wells and the respected neutral, Judge Layn Phillips. The Settlement Agreement was reached only after the provision of key data that allowed Class Counsel to adequately evaluate the possibility of settlement, and only after the exchange of written discovery, the production of 50,000 pages of discovery documents, and several depositions.  In addition, the Parties briefed one motion to dismiss and were almost complete in briefing a second motion to dismiss. Thus, the Settlement was reached after considerable investigation and careful consideration and discussions.  The Parties were thus fully aware of the issues and risks associated with their respective claims and defenses.

### III.    THE SETTLEMENT AGREEMENT

The full terms of the Settlement are embodied in the Settlement Agreement attached hereto as Exhibit B.  The Agreement is fair and reasonable to the Class, as it provides significant and meaningful benefits to the Class.  Moreover, the terms of the Settlement have been carefully crafted and relate directly to the conduct that Plaintiff challenged in this case.  In sum, the

Settlement calls for a significant monetary payment to the Class and also provides meaningful prospective relief. The following is a summary of the material terms.

## A.  The Class

The Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Class is defined as:

> All Bank of America consumer checking Account holders in the United States who, from May 25, 2011, through the date of preliminary settlement approval, were charged Overdraft Fees on transactions that were authorized and approved when sufficient funds were available to cover the amount of authorization.

## B.  Monetary Relief for the Class

The Settlement requires Bank of America to transfer $27.5 million dollars into a Settlement Fund within 10 days of Preliminary Approval (Settlement Agreement, ¶ 50). No portion of that Settlement Fund will revert to Bank of America. Rather, the Fund will be used to make distributions to Settlement Class Members; pay for notice and administration costs; and pay for attorneys' fees and expenses and a class representative Service Award to Plaintiff in amounts approved by the Court.

## C.  Class Release

In consideration of the benefits conferred by the Settlement, all Class Members who do not submit a valid and timely opt-out request will be deemed to have released Bank of America from claims related to the subject matter of the Action. The detailed release language can be found in Section XIV of the Settlement Agreement.

## D.  The Notice Program

The Notice program in this Settlement (Settlement Agreement § VIII) is designed to be the best notice practicable, and it is tailored to take advantage of the information Bank of America has available about the Class Members. The Notice program is reasonably calculated under the

circumstances to apprise the Class of (a) the pendency of the Action; (b) the Court's preliminary certification of the class; (c) the terms of the Settlement and the Class Members' rights to opt-out of the Settlement Class or to object to the Settlement; (d) Class Counsel's expected fee application; and (e) the expected request for Service Award for Plaintiff. The Notices are attached as Exhibits C, D and E hereto.

The Notice program is comprised of six parts: (1) for current Bank of America customers, direct electronic notice via email to addresses held in Bank of America's business records ("E-mail Notice"); (2) for former Bank of America accountholders, and for each Class Member where the E-mail Notice is returned or bounces back as undeliverable, the Settlement Administrator will mail, via first-class mail postcard, a Mailed Notice to each Class Member at the address identified in Defendant's records (Settlement Agreement, ¶¶ 65, 67)[1]; (3) a Detailed Notice with more detail than the direct mail or publication notices, and which will describe the procedure Class Members must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees, that will be available on the Settlement Website; (4) a Settlement Website, which will explain the Settlement, gives answers to frequently asked questions, and provide links to the Detailed Notice, and the Settlement Agreement; and (5) a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries (Settlement Agreement, ¶¶ 46, 61(d), 69).

All Notices will include, among other information: (a) a description of the material terms of the Settlement; (b) a date by which Class Members may exclude themselves from or "opt out" of the Class and a description of how to effectively opt out; (c) a date by which Class Members

---

[1] However, before mailing postcards, the Settlement Administrator will verify and update the mailing addresses received through the National Change of Address database to maximize address accuracy. *Id.*, ¶ 67.

may object to the Settlement; (d) the date upon which the Final Approval Hearing will occur; and the web address of the Settlement Website at which Class Members may access the Detailed Notice, this Agreement, and other related documents and information (Settlement Agreement, ¶ 62).

In addition, all notices will make clear that opt-outs must be received by counsel before the Opt-Out Period expires, and any objections must be received by counsel for the Parties by the objection deadline. *Id.*, ¶ 63. For an objection to be valid, it must include information specified in the Settlement Agreement. *Id.*, ¶ 64.

### E.  Settlement Administration

The Parties have engaged the leading class action notice and administration provider Epiq Systems ("Epiq") to deliver notice to the Settlement Class. In addition, Epiq will administer various aspects of the Settlement, including, but not limited to, obtaining Settlement Class member contact information; establishing and maintaining the Settlement Website; toll-free telephone line for Settlement Class inquiries, and P.O. box for requests for exclusion; providing weekly reports to Class Counsel and Bank of America's Counsel; and processing distributions to Settlement Class Members. Class Counsel and counsel for Bank of America will jointly oversee Epiq (Settlement Agreement, § VII).

### F.  Allocation of the Settlement Fund

To determine the Bank of America Accounts eligible for the settlement, the Bank has agreed to furnish Plaintiff's counsel and expert with sufficient data to ascertain all accounts held by Settlement Class Members in which, on one or more calendar days during the Class Period, Bank of America assessed Overdraft Fees on debit card transactions that were initially authorized when sufficient funds were available to cover the amount of authorization ("Relevant Overdraft

Fees"). The New Settlement Fund will be allocated on a *pro rata* basis to the Settlement Class Members based on the total number of Relevant Overdraft Fees each incurred (Settlement Agreement, § X).

## G. Distribution of the Settlement Fund

The Parties have agreed to distribute the Settlement Fund proportionally among the class members on a *pro rata* basis, determining each Settlement Class Member's percentage share by dividing the Net Settlement Fund by the total of all Settlement Class Members' Relevant Overdraft Amounts, in order to determine the Per Fee Percentage of the Net Settlement Fund paid per overdraft fee, and then multiplying that amount by the number of Relevant Overdraft Fees incurred by each Settlement Class Member, to determine the Pro Rata Percentage of the Settlement Fund to which each class member is entitled (Settlement Agreement, ¶¶ 75-77). From there, the Pro Rate Percentage is multiplied by the Net Settlement Fund to determine the amount to which each Settlement Class Member is entitled, with the caveat that any Settlement Class Member with a calculated payment amount of less than $5.00 will have his or her share adjusted upward to $5.00. *Id.* ¶¶ 78-79. Settlement Payments to current Bank of America accountholders will be made via a direct credit to the Settlement Class Member's account, and payments to past accountholders will be mailed by check by Epiq. *Id.* ¶¶ 80, 82.

## H. Class Representative Service Award

Class Counsel will ask the Court to approve a service award not to exceed $20,000 for Plaintiff Bodnar. Plaintiff devoted substantial time and effort, including being deposed by the Bank, responding to detailed discovery requests and participating in regular in-person meetings, telephone conferences and continuous written communications with counsel to assist in the prosecution of the case and to remain fully apprised of all developments in this case and the

progress of all Settlement discussions.  Zavareei Decl. at ¶ 17.  If the Court approves the Service Award, it will be paid from the Settlement Fund (Settlement Agreement, ¶ 93).  This award will compensate the class representative for her time and effort in the litigation, and for the risk she undertook in prosecuting the case against Bank of America.

## I. Attorneys' Fees and Costs

Any award of attorneys' fees, costs and expenses to Class Counsel shall be payable solely from the Escrow Account and taken from the Settlement Fund, and is subject to Court approval. The determination of Class Counsel's request for attorneys' fees shall be based on controlling Third Circuit precedent involving the award of fees in common fund class actions.  *Id.*, ¶ 91. Plaintiffs will submit their request for attorneys' fees at the time they seek final approval of the Settlement Agreement.  Class Counsel intends to seek up to thirty three percent (33%) of the Settlement Fund for attorneys' fees, plus reimbursement of their expenses incurred in connection with prosecuting this case.  Zavareei Decl., ¶ 18.  Any fee amount remains subject to the approval of the Court.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Fed. R. Civ. P. 23 contemplates a sequential process for courts evaluating class action settlements.  First, a court must determine whether a class should be certified for settlement purposes.  *See*, *e.g.*, *Sullivan v. D.B. Inv., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*).  Second, a court must consider whether to approve the settlement preliminarily and order notice be provided to the class.  *See*, *e.g.*, *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.* ("*In re GMC*"), 55 F.3d 768, 787 (3d Cir. 1995).  Third, after the class has been notified and has had the opportunity to consider the settlement, the Court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate."  *Id.*; Fed. R. Civ. P. 23(e).

At the preliminary approval stage, the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Thomas v. NCO Fin. Sys.*, No. 00–5118, 2002 WL 1773035 at *5 (E.D. Pa. July 31, 2002) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)).

In *General Motors*, the Third Circuit stated that "an initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." 55 F.3d at 785–86. The purpose of this examination is in part to detect defects in the settlement that would risk making "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:25 (4th ed. 2002).

In short, a court's review of preliminary approval is less stringent than during final approval. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); Manual for Complex Litigation (Fourth) § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."); *see also In re GMC*, 55 F.3d 785 (distinguishing between preliminary approval and final approval); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807 at *1-2 (E.D. Pa. May 11, 2004) (same).

District courts have broad discretion in determining whether to approve a proposed class action settlement. *See*, *e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). However, there exists a strong judicial policy favoring pretrial settlement of complex class

action lawsuits, where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *In re Warfarin*, 391 F.3d at 535 ("[T]here is an overriding public interest in settling class action litigation and it should therefore be encouraged."). Settlement is favored, in part, because of the complexity and size of class actions and the ability of a settlement to conserve judicial resources while providing meaningful relief. *See Ehrheart*, 609 F.3d at 594-95 (the presumption in favor of settlement is especially strong in class actions and other complex cases where substantial juridical resources can be conserved by avoiding formal litigation.) (citation and quotation marks omitted).

The Settlement here meets the standards governing preliminary approval. There are no obvious deficiencies; the Settlement falls well within the range of reasonableness; and the plan of allocation treats Settlement Class Members equitably. Its terms reflect a fair and reasonable result beneficial to all Settlement Class members. The Settlement was reached only after strongly contested litigation and extensive discovery over nearly two years—and is the result of arm's length, good faith negotiations between the parties, including, most recently, negotiations moderated by both Magistrate Judge Wells and the highly experienced mediator Judge Phillips. Accordingly, in light of the work they have invested in the case since its filing, and the extensive litigation that has ensued since then, the Parties and all counsel are well informed and positioned to assess the risks and merits of the case.

## A. The Proposed Settlement is a Result of Vigorous, Informed, Arm's Length Negotiations.

Whether a settlement arises from arm's length negotiations is a key factor in deciding whether to grant preliminary approval. *See In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898 at *2 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who was privately retained and served

as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *In re Auto. Refinishing Paint Antitrust Litig*, 2004 WL 1068807 at *2 (preliminarily approving class action settlement that "was reached after extensive arm's length negotiation between very experienced and competent counsel"); *see also Newberg on Class Actions* § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval"). Such is the case here.

Here, the parties engaged in strongly contested, arm's length negotiations that spanned nearly a full year. This case has been hard fought, and the settlement negotiations were extensive and adversarial in nature. The negotiations included mediation settlement sessions assisted by both Judge Wells and a renowned mediation expert, Judge Layn Phillips. The Parties' extensive arm's length negotiations fully support a finding that the proposed settlement is fair.

Moreover, the Parties have vigorously litigated this case and have thoroughly explored the issues in this Litigation. Zavareei Decl., ¶¶ 6-8. As discussed above, Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive formal discovery with Bank of America. *Id.*, ¶ 6. Class Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the case, and prepared them for well-informed settlement negotiations. Finally, Class Counsel and Defendant's counsel are experienced in class action litigation. Zavareei Decl., ¶ 2. Accordingly, the proposed Settlement is entitled to a strong initial presumption of fairness.

**B. Because Discovery Was Nearly Complete, The Stage of This Case Supports Preliminary Approval.**

The stage at which settlement occurs demonstrates "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re GMC*, 55 F.3d at 813. "Where [the] negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent." *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003)). There is no doubt that, here, "meaningful discovery" took place.

Plaintiff requested, received and reviewed over 50,000 pages of documents. Zavareei Declaration, ¶ 7. That document production was in response to three separate sets of document requests. *Id.* Plaintiff deposed five separate Bank of America employees, in San Francisco, CA, Worcester, MA, and Charlotte, NC. Two depositions were Rule 30(b)(6) depositions. In addition, Plaintiff issued four third party subpoenas, and worked with the recipients of those subpoenas to attain relevant documents. *Id.*, ¶ 8. In addition, Defendant deposed Plaintiff Bodnar in Allentown, PA. *Id.*, ¶ 17.

Simply put, there was no rush to settlement here. This Settlement was reached only after both sides endured the rigors of hard-fought discovery and litigation.

**C. The Proposed Plan of Allocation Treats Class Members Fairly**

The Settlement defines a clearly identifiable Settlement Class—one ascertainable by a methodological review of Bank of America's business records. The Class definition complies with the requirements of the Third Circuit's decision in *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013), and *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012). Simply put, this is *not* a case where "class members are impossible to identify without extensive and individualized factfinding or 'mini-trials[.]'" *Marcus*, 687 F.2d at 593.

Moreover, the proposed Settlement treats all Settlement Class Members fairly and does not provide undue preferential treatment to any individual Settlement Class Member. Courts grant preliminary approval of plans of allocation when they are "rationally related to the relative strengths and weaknesses of the respective claims asserted." *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 2572937 at *2 (S.D.N.Y. Jun. 1, 2010) (quoting *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144 at *3 (S.D.N.Y. Nov. 16, 2009). The proposed plan of allocation easily meets this standard. Indeed, the Parties consulted in person with Magistrate Judge Wells to ensure that the plan for allocating the Settlement Fund was just and equitable to all Settlement Class Members. Zavareei Decl., ¶¶ 13-14.

Specifically, the plan of allocation in the Settlement—which is discussed in more detail in the Settlement Agreement—divides the Net Settlement Fund (that is, the Settlement amount minus any deductions for notice and administration costs, class representative service award, and attorneys' fees and costs) on a *pro rata* basis based on the number of relevant Overdraft Fees assessed against an account during the Class Period. In short, the higher number of relevant Overdraft Fees a Settlement Class Member incurred, the higher his or her Settlement distribution will be. In addition, the Parties have agreed to a minimum distribution amount of $5 for a Settlement Class Members. This minimum amount serves to ensure that the benefit to the Class Member far exceeds the cost of delivering the benefit to the Settlement Class Member (in the form of a paper check, for example).

The plan of allocation rests, entirely, upon accurate, extensive overdraft fee data maintained in Bank of America's records, and provided by the Bank to allow for the administration of this Settlement. Zavareei Decl., ¶ 15.

Plaintiff and Class Counsel believe that this plan of allocation is fair and reasonable, and merits preliminary approval. *Id.*, ¶ 16.

**D. The Proposed Settlement is Well Within the Range of Possible Approval.**

Here, the relief the Settlement Agreement provides for Class Members is outstanding. Bank of America has agreed to create a Settlement Fund of $27.5 million to reimburse Settlement Class Members for Overdraft Fees incurred during the Class Period. Plaintiff estimates this amount represents approximately 13% of the *maximum* amount damages they may have been able to secure at trial. Zavareei Decl., ¶ 20. That maximum damages amount represents, essentially, all overdraft fees charged on debit card transactions when a transaction was authorized into a positive available balance. But it is entirely possible that the Court would have held that this damages number was unsupportable. For example, the Court may have held that the contracts at issue here did allow Bank of America to charge overdraft fees on such transactions. In that event, Plaintiff's damages would have been calculated, alternatively, based on the second main damages theory alleged in Plaintiff's Amended Complaint—*viz.*, that the Bank was not allowed to charge overdraft fees on debit card transactions whose corresponding "debit holds" or "memo holds" caused other, later in time checking account transactions to incur overdraft fees. In that scenario, damages would be reduced significantly. When measured against that damages scenario—which the Bank would have argued was the maximum exposure it faced, if it faced any liability whatsoever, the recovery in the Settlement represents 48% of damages. Lastly, and crucially, no monies whatsoever will be returned to Bank of America.

This recovery of between 13% and 48% is well within the range of recovery routinely approved by courts in this Circuit. *E.g.*, *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282 at *15-16 (D.N.J. July 24, 2006) (deeming settlement fund of $15 million "within

the range of reasonableness" where early damages estimates totaled $104 million); *Nichols v. SmithKline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616 at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement fund representing between 9.3% and 13.9% of damages estimates as "consistent with those approved in other complex class action cases"); *In re Ravisent Techs., Inc. Secs. Litig.*, No. Civ. A. 00-CV-1014, 2005 WL 906361 at * 9 (E.D. Pa. Apr. 18, 2005) (finding settlement of 12.2% to be "within the range of reasonable recovery for a securities class action"); *In re Gen. Instrument Secs. Litig.*, 209 F. 2d 423, 431 (E.D. Pa. 2001) (finding 11% recovery of plaintiffs' high-end damages estimate to be "within the range of reasonableness"); *In re Aetna Inc. Secs. Litig.*, No. Civ. A. MDL 1219, 2001 WL 20928 at *12 (E.D. Pa. Jan. 14, 2001) (accepting recovery of approximately 10% of best possible recovery); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement that "represents only about 5.35% of the estimated damages for the entire class period").

However measured, the $27.5 million monetary benefit conferred upon the Settlement Class represents a significant recovery, under all of the circumstances and in light of the substantial risks of litigation on both the merits and in connection with what surely would have been a contested class certification proceeding. Zavareei Decl., ¶ 20. But that is not the only benefit that will accrue to the Settlement Class. Indeed, the Bank has also promised to implement meaningful prospective relief in the form of a new announcement to current accountholders regarding the operation of debit cards, "debit holds," posting processes, and the effect on overdraft fees (Settlement Agreement, ¶ 52). This notice to current customers will clarify the practices at the center of this lawsuit. Zavareei Decl., ¶ 21.

Here, in light of the novel issues present in this case, as well as the factual and legal complexity entailed in the prosecution and defense of this case and the unpredictability associated

with class certification proceedings, a lengthy trial and any appellate proceedings (both under Fed. R. Civ. P. 23(f) and on the merits), Plaintiff respectfully submits that the result achieved is excellent under all of the circumstances. As the Proposed Settlement is "within the range" of possible approval, the Class should be notified and given the opportunity to evaluate the terms of the Settlement.

### E. Plaintiff and the Class Faced Significant Risk in This Complex Litigation

While Class Counsel believes that Plaintiff's claims are meritorious, there are substantial risks to achieving a better result for the Settlement Class through continued litigation. Those risks are laid bare in the two motions to dismiss that Bank of America filed—only one of which had been denied at the time of the Settlement. Dkt. 18, 53 and 30. Specifically, Plaintiff faced legal risk that, *inter alia*; that a factfinder could determine the Bank's disclosures were adequate, not misleading and could not form the basis of a breach of contract claims; and that Plaintiff's Pennsylvania consumer protection and common law claims were likewise meritless.

Moreover, while Class Counsel believes that a class would be certified even over Defendant's objections, there is always a risk that Defendant would successfully block class certification. In attempting to block class certification, Bank of America would point to variations in accountholders' response to, and interpretation of, Bank disclosures. But for the Settlement, Defendant would have contested certification of the Class. Further, there is no assurance of maintaining certification of a class, as courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time. Thus, the Settlement avoids any uncertainty with respect to class certification or decertification. If class certification was denied and that denial was affirmed on appeal, the value of Plaintiffs' claims would have been extinguished. Zavareei Decl., ¶ 20.

In short, Defendant had arguments and potential defenses available to it at both stages. Some of Defendant's arguments and defenses on liability include those reflected in its pending motion to dismiss, as well as arguments that Defendant could have presented to limit or restrict the potential damages available to the Class even in the event of a judgment in its favor. Needless to say, protracted litigation carries inherent risks that would necessarily have delayed and endangered Class Members' monetary recovery. Zavareei Decl., ¶ 20. This Settlement, on the other hand, provides substantial relief to Class Members without further delay. In short, it is Class Counsel's considered opinion that the recovery from Defendant under this Settlement is fair and reasonable. Although Plaintiff and Class Counsel would have sought more in any trial, the value of the Settlement constitutes a substantial recovery under all of the circumstances. *Id.* Moreover, notwithstanding the confidence of Class Counsel in the merits of the Plaintiff's claims against Bank of America, Class Counsel are cognizant that significant obstacles existed to both class certification and a victory at the bench trial that ultimately have decided the merits of Plaintiff's claims. Under all of these circumstances, the proposed Settlement Agreement is fair, reasonable, and adequate.

## V.  THE PROPOSED FORM AND METHOD OF CLASS NOTICE SATISFY DUE PROCESS

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement. *See* Manual For Complex Litig. §§ 21.312, 21.631 (4th ed. 2011). "[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) (internal quotation marks and citation omitted).

Under Rule 23(e)(l) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Rule 23(c)(2)(B) provides that the "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Here, the form and content of the proposed Email Notice, Mail Notice, and Long-form Notice (the "Notices") satisfy all these legal parameters. *See* Exhibits C, D and E to this Memorandum.

As discussed above, the Notice Program in this Settlement (Settlement Agreement, § VIII) is designed to be the best notice practicable, and it is tailored to take advantage of the information Bank of America has available about the Class Members. The Notice program is reasonably calculated under the circumstances to apprise the Class of (a) the pendency of the action; (b) the Court's preliminary certification of the class; (c) the terms of the Settlement and the Class Members' rights to opt-out of the Settlement Class or to object to the Settlement; (d) Class Counsel's expected fee application; and (e) the expected request for Service Award for Plaintiff. *Id.*

The Notice program is comprised of six parts: (1) for current Bank of America customers, direct electronic notice via email to addresses held in Bank of America's business records ("E-mail Notice"); (2) for former Bank of America accountholders, and for each Class Member where the E-mail Notice is returned or bounces back as undeliverable, the Settlement Administrator will mail, via first-class mail postcard, a Mailed Notice to each Class Member at the address identified in Defendant's records (Settlement Agreement, ¶ 66); (3) a Long Form Notice with more detail than the direct mail or publication notices, and which will describe the procedure Class Members must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees, that will be available on the Settlement Website; (4) a Settlement Website, which will explain the Settlement, gives answers to frequently asked questions, and provide links to the Detailed Notice, and the Settlement Agreement; and (5) a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries. Settlement Agreement, § VIII.

The proposed Notices satisfy all of these criteria and are in fact the best notice practicable. The content of the proposed notice is more than sufficient because it "fairly apprise[s] the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *See Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2nd Cir. 1995) (internal quotations omitted). All Notices will include, among other information: (a) a description of the material terms of the Settlement; (b) a date by which Class Members may exclude themselves from or "opt out" of the Class and a description of how to effectively opt out; (c) a date by which Class Members may object to the Settlement; (d) the date upon which the Final Approval Hearing will occur; and the web address of the Settlement

Website at which Class Members may access the Detailed Notice, this Agreement, and other related documents and information. Settlement Agreement, § VIII.

Class Members will be provided with at least sixty (60) days to submit any objections. That is more than sufficient under applicable case law. *See Maywalt*, 67 F.3d at 1079; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom.*; *Reilly v. Tucson Elec. Power Co.*, 512 U.S. 1220 (1994).

Moreover, the Parties have devised a Notice Plan that will ensure that virtually all Settlement Class Members, whether current or former customers of Bank of America, will receive individual notice within 60 days of this Court's preliminary approval of the Settlement Agreement. As discussed above, the Parties will employ Email Notice for current accountholders at Bank of America. Settlement Agreement, ¶ 65. For any Email Notice not successfully delivered to a Class Member, the Settlement Administrator will subsequently send, via First-Class Mail, a postcard notice to Settlement Class Members, using updated mailing address information. *Id.*, 67. These actions will ensure virtually all Class Members will receive individualized notice. Courts routinely approve notice regimes involving either only email, combinations of email or First-Class mail, or combinations of email and published notice. *E.g.*, *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-987, 2012 WL 27461 at *6 (W.D. Pa. Jan. 3, 2012) (approving notice consisting of email to defendant's promotional database and publication in USA Today to be sufficient); *Berkson v. Gogo LLC*, ___ F. Supp. 3d ____, No. 14-CV-1199, 2015 WL 7960042 at *19 (E.D.N.Y. Dec. 4, 2015) (approving email-only notice); *Kolinek v. Walgreen Co.*, ___ F.R.D. ____, No. 13 C 4806, 2015 WL 7450759 at *13 (N.D. Ill. Nov. 23, 2015) (rejecting objector's argument that email notice is insufficient); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 605 (N.D. Cal. 2015) (approving email notice with mailed notice to persons with emails returned as undeliverable); *In re TD Ameritrade Account*

*Holder Litig.*, No. C 07–2852 SBA, 2011 WL 4079226 at *10 (N.D. Cal. Sept. 13, 2011) (approving email notice even where class members did not receive mailed notice "in cases where the delivery via email failed," as "there is no requirement that notice be perfect"); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059 at *2 (N.D. Cal. Mar. 17, 2010) (even though some e-mail filtered through a SPAM e-mail filter and not all class members saw it, the notice was adequate); *Guy v. Casal Institute of Nevada, LLC*, No. 13-cv-02263, 2014 WL 1899006 at *7 (D. Nev. May 12, 2014) ("The Court in *Phelps* stated that there was no indication that service by first class mail or email would be ineffective or inadequate.").

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The proposed Notice is comprehensive and more than satisfies this standard, as it provides for Email or Mailed Notice to be provided directly to the vast majority of Settlement Class Members.

## VI.    THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES

The Settlement Class should be certified, for purposes of the Settlement, because it satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b). Class actions certified in conjunction with settlements are well recognized. *See, e.g.*, *Sullivan*, 667 F.3d at 311; *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 253-54 (E.D. Pa. 2012). The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." MCL 4th, § 21.632. Under

Rule 23(a), Plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Court is to apply a "rigorous analysis" to ensure that each of the requirements of Rule 23 are met. *See Sullivan*, 667 F.3d at 306. However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Sullivan*, 667 F.3d at 322 n.56 (same). This Settlement easily meets each of the requirements of Rule 23(a) and Rule 23(b)(3) for the proposed Settlement Class.

**A. The Class Satisfies the Requirements of Rule 23(a).**

1. Numerosity

Rule 23(a)(1) provides for class certification where, as here, the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). "'No magic number exists satisfying the numerosity requirement.'" *Jackson v. Se. Pa. Transp. Auth.*, 260 F.R.D. 168, 185-86 (E.D. Pa. 2009) (citation omitted). The Third Circuit generally has approved classes of forty or more. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the Settlement Class numbers close to 3 million. The numerosity requirement is plainly met.

## 2. Commonality

Rule 23(a)(2)'s requirement of common questions is also satisfied here. Whether or not Bank of America breached its contractual promises to consumers in the Deposit Agreements in effect during the Class Period is perhaps the central question of this litigation.

"Rule 23(a)(2)'s commonality element requires [merely] that the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin*, 391 F.3d at 527-28 (affirming certification of settlement class). "A finding of commonality does not require that all class members share identical claims." *Id.* at 530 (citation and internal quotation marks omitted). Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met here. In addition to the central questions about the meaning of the contracts, other common questions of law and fact include:

   a. Whether the Bank imposed overdraft fees on recurring debit card transaction when those transactions were authorized into sufficient available balances or funds available;

   b. Whether the Bank breached its covenant of good faith and fair dealing with Bodnar and other members of the Classes through its overdraft policies and practices on APPSN Transactions;

   c. Whether the Bank converted money belonging to Bodnar and other members of the Classes through its overdraft policies and practices;

   d. Whether the Bank was unjustly enriched through its overdraft policies and practices; and

   e. Whether the Bank violated the consumer protection acts of certain states through its overdraft policies and practices.

f.      The proper method or methods by which to measure damages, and

g.      The declaratory relief to which the Classes are entitled.

The commonality requirement is satisfied.

3. Typicality

"If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). Here, all claims arise from the same challenged conduct—the Bank's assessment of Overdraft Fees on particular debit card transactions—and involve the "same elements the other class members would have to prove if they brought individual actions." *In re Plastic Cutlery Antitrust Litig.*, No. 96-cv-728, 1998 WL 135703 at *4 (E.D. Pa. Mar. 20, 1998). As the Third Circuit explained, the typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). "The typicality criterion focuses on whether there exists a relationship between the plaintiffs' claims and the claims alleged on behalf of the class." *Newberg on Class Actions* § 3:13.

Plaintiff's claims are "typical" of other Settlement Class Members' claims because they were subjected to a uniform set of debit card processing and Overdraft Fee policies and practices that Bank of America used for all accountholders. Plaintiff's claims therefore arise from the same course of conduct as the other Class Members' claims. Additionally, Plaintiff's and all other Settlement Class Members' claims are premised on the same legal theories. Accordingly, the typicality requirement is satisfied.

4. <u>Adequacy of Representation</u>

The adequacy requirement of Rule 23(a)(4) has two prongs: (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the entire class." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996). "Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Processed Egg Prods.*, 284 F.R.D. at 261 (internal quotations and citations omitted).

Fed. R. Civ. P. 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "seeks to uncover conflicts of interest between the named parties and the class they seek to represent." *In re Warfarin*, 391 F.3d at 532. This requirement is satisfied here, as the named Plaintiff has vigorously pursued the claims of the Settlement Class she purports to represent, and there is no intra-class conflict. The named Plaintiff's interests are aligned with those of the Settlement Class.

The Settlement Class is represented by lawyers who have extensive complex class action experience. Class Counsel have an extensive background in litigating complex litigation and consumer class actions, have been appointed class counsel in prior cases, and have the resources necessary to prosecute this action to its conclusion. Plaintiff provided a detailed description of Class Counsel's experience and qualifications in her Motion for Appointment of Interim Class Counsel and Interim Lead Class Counsel. Dkt. 33. Indeed, this Court granted that motion and named Tycko & Zavareei LLP as Interim Lead Class Counsel on January 15, 2015, based on just these factors. Dkt. 34.

**B. Rule 23(b) Factors**

1. <u>Common Questions of Law and Fact Predominate Over Individual Questions.</u>

In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Newberg on Class Actions* § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citing 7A Wright, Miller, & Kane 518-19). The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by the representative plaintiff. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2008) (citing *Amchem*, 521 U.S. at 623). Predominance "does not demand unanimity of common questions, it requires that the common questions outweigh individual questions." *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 254 (E.D. Pa. 2006) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001)).

Here, the shared issues surrounding the legality and impact of the Bank's posting and Overdraft Fee practices predominate over any individual issues. The claims are founded upon a common legal theory. Indeed, any individual issues are limited essentially to the *number* of allegedly wrongly-assessed Overdraft Fees—something which will be determined with exactitude by reference to Bank of America's business records. Here, the focus is on the Defendant's conduct and not on matters pertaining to individual Settlement Class members. *See*, *e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666 at *12 (M.D. Pa. Nov. 19, 2007) (stating that "'[c]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members'") (citation omitted).

Additionally, "'[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individual damage issues.'" *In re Cmty. Bank of No. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 306 (3d Cir. 2005) (citation omitted).

In short, Plaintiff submits that the predominance requirement is satisfied for settlement purposes because common questions may be resolved for all Class members in a single common judgment.

## 2. Superiority

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 533-34 (citation and quotation marks omitted). Rule 23(b)(3) identifies various factors as pertinent to a superiority finding, including class members' interests in pursuing separate actions, the extent of any independent litigation already begun by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A-D). *See also Amchem*, 521 U.S. at 615 (noting that the superiority requirement ensures that resolution by a class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'" (citation omitted)).

The difficulty for Settlement Class Members to bring their own cases to recover relatively small amounts of money is one core reason a class action is superior here. Moreover, without certification, the Bank and the court system could face scores of cases challenging the same conduct, potentially resulting in conflicting rulings. A class action settlement will "achieve

economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated." *Amchem*, 521 U.S. at 615. Therefore, a class action is superior to other available methods for fairly and efficiently adjudicating this case.

## VII. CONCLUSION

For these reasons, and those detailed herein, Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) certify for settlement purposes the proposed Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Sherry Bodnar as class representative; (4) approve the Notice program set forth in the Agreement, and approve the form and content of the Notices, attached hereto as Exhibits C, D and E; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay the litigation against Defendant pending Final Approval of the Settlement; (7) appoint as Class Counsel the attorneys and law firms listed in paragraph 19 of the Settlement Agreement; and (8) schedule a fairness hearing to consider granting Final Approval of the Settlement to occur no sooner than June, 2016.

Dated: January 13, 2016

       /s/ Hassan Zavareei
Hassan A. Zavareei (*pro hac vice*)
Jeffrey Kaliel (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

*Interim Lead Class Counsel*

Jeffrey M. Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

*Interim Class Counsel*

## CERTIFICATE OF SERVICE

I, Hassan Zavareei, hereby certify that the foregoing document was filed via the Court's CM/ECF system on January 13, 2016, thereby causing a true and correct copy to be served on all ECF-registered counsel of record.

_/s/ Hassan A. Zavareei_
Hassan A. Zavareei