## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHERRY L. BODNAR, on Behalf of herself and All Others Similarly Situated,** | |
| **Plaintiff,** | **Case No. 5:14-cv-03224-EGS** |
| **vs.** | |
| **BANK OF AMERICA, N.A.,** | |
| **Defendant.** | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE AWARD

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. CLASS COUNSEL IS ENTITLED TO RECOVERY OF REASONABLE
ATTORNEYS' FEES AND EXPENSES.................................................................. 3

    A. The Requested One-Third Fee Award is Reasonable Under the Percentage of the
Fund Method................................................................................................... 4

    B. All *Gunter* Factors Support the Award...................................................... 6

      1. The Size of the Fund and Number of Persons Benefited Supports the Requested
Award................................................................................................. 6

      2. The Complete Lack of Real Objections Weighs in Favor of the Requested Award .... 7

      3. The Skill and Efficiency of the Attorneys Involved Weighs in Favor of the
Requested Award ............................................................................... 8

      4. The Complexity and Duration of the Litigation Weighs in Favor of the Requested
Fee Award ......................................................................................... 9

      5. The Risk of Nonpayment Was Substantial ............................................. 10

      6. Class Counsel Have Devoted Substantial Time and Effort to this Action ................. 11

      7. The Requested Award Is Reasonable in Comparison to the Amounts Typically
Awarded in Other Class Cases................................................................. 12

      8. Application of the Prudential Factors Supports the Requested Fee Award............... 14

      9. A Lodestar Cross-Check Supports the Requested Fee Award.................................. 15

      10. The One Objection to the Fee Request Is Meritless ..................................... 19

III. CLASS COUNSEL IS ENTITLED TO RECOUP COSTS REASONABLY
EXPENDED DURING THE LITIGATION ...................................................... 21

IV. THE REQUESTED SERVICE AWARD IS REASONABLE........................................... 23

V. CONCLUSION.................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Adeva v. Intertek USA Inc.*,
No. 09–1096, ECF No. 228 (D.N.J. Dec. 22, 2010) ................................................................. 5

*Bernhard v. T.D. Bank, N.A.*,
No. 08–4392, ECF No. 40 (D.N.J. Feb. 3, 2010) ....................................................................... 5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................................. 3, 4

*Bradburn Parent Teacher Store, Inc. v. 3M*,
513 F. Supp. 2d 322 (E.D. Pa. 2007) ..................................................................................... 10

*Bredbenner v. Liberty Travel, Inc.*,
Civ. A. Nos. 09–905, 09–1248, 09–4587, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ............... 5

*Casey v. Citibank, N.A.*,
No. 5:12-CV-820, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) ............................................ 7

*Charles v. Goodyear Tire & Rubber Co.*,
976 F. Supp. 321 (D.N.J. 1997) .............................................................................................. 4

*Creed v. Benco Dental Supply Co.*,
No. 3-12-CV-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ...................................... 23

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ............................................................................................ 15

*First State Orthopaedics v. Concentra, Inc.*,
534 F. Supp. 2d 500 (E.D. Pa. 2007) ..................................................................................... 24

*Fitzgerald v. Gann Law Books et al*,
11-cv-4287, 2014 WL 8773315 (D.N.J. Dec. 17, 2014) ......................................................... 25

*Frederick v. Range Res.-Appalachia, LLC*,
No. C.A. 08-288 ERIE, 2011 WL 1045665 (W.D. Pa. Mar. 17, 2011), ................................. 26

*Godshall v. Franklin Mint Co.*,
No. 01–6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ..................................................... 24

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) .......................................................................................... passim

*Hicks v. Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct.24, 2005) .................................. 29

*In re AT&T Corp., Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) .................................................................................................. 27

*In re Baby Products Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ............................................................................................... 6, 7

*In re CareSciences, Inc. Sec. Litig.*,
Civ. A. No. 01–5266 (Dkt. No. 37) (E.D. Pa. Oct. 29, 2004) ................................................ 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) ............................................................................................ 9

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) .................................................................................................. 27

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ........................................................................... 19, 21

*In re FAO Inc. Sec. Litig.*,
   No 03–942, 2005 WL 3801469 (E.D. Pa. May 20, 2005) ..................................... 24

*In re First Fidelity Bancorporation Sec. Litig.*,
   750 F.Supp. 160 (D.N.J. 1990) ....................................................................... 17

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) .............................................................. 15, 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ............................................................................. 3, 4

*In re Linerboard Antitrust Litig.*,
   No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .............. 20, 21, 29

*In re OSB Antitrust Litig.*,
   Civ. A. No. 06-826, slip op. (ECF No. 947) (E.D. Pa. Dec. 9, 2008) ...................... 27

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
   148 F.3d 283 (3d Cir. 1998) ...................................................................... passim

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...................... 15

*In re Rent–Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................................. 17

*In re Residential Doors Antitrust Litig.*,
   Civ A. Nos. 94-3744, 96-2125, MDL 1039, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) .......... 28

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) .............................................................. 21

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ..................................................................... 8, 10, 19

*In re Tricor Direct Purchaser Antitrust Litig.*,
   Civ. A. No. 05-340, slip op. (ECF No. 543) (D. Del. Apr. 23, 2009) ...................... 15

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) ....................................................................... 27

*Johnson v. Cmty. Bank, N.A.*,
   No. 3:12-CV-01405, 2013 WL 6185607 (M.D. Pa. Nov. 25, 2013) ...................... 16

*Khait v. Whirlpool Corp.*,
   No. 06–6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20 2010) ................................... 5

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*,
   No. 15-2485, 2016 WL 611441 (3d Cir. Feb. 16, 2016) ...................................... 23

*Lazy Oil Co. v. Wotco Corp.*,
   95 F. Supp. 2d 290 (W.D. Pa. 1997) .............................................................. 24

*Lenahan v. Sears Roebuck & Co.*,
   No. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006) ...................................... 5

*Martin v. Foster Wheeler Energy Corp.*,
   No. 3:06-CV-0878, 2008 WL 906472 (M.D. Pa. 2008) ........................................ 16

iv

*Mayer v. Driver Solutions, Inc.*,
   Civ. A. No. 10-1939, 2012 WL 3578856 (E.D. Pa. Aug. 17, 2012) ........................................ 29

*Meijer, Inc. v. 3M*,
   No. 04–5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) .................................................... 21

*Mirakay v. Dakota Growers Pasta Co.*,
   No. 13-CV-4429 JAP, 2014 WL 5358987 (D.N.J. Oct. 20, 2014) ..................................... 6, 29

*Muchnick v. First Federal*,
   No. 86-1104, 1986 WL 10791 (E.D. Pa. Sept. 30, 1986) ....................................................... 26

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) ..................................................................................... 19, 21

*Oh v. AT&T Corp.*,
   225 F.R.D. 142,  (D.N.J. 2004) ................................................................................................. 28

*Perod v. McKenzie Check Advance of Pennsylvania*,
   No. 98–CV–6787 (ECF Nos. 61, 65) (E.D. Pa. June 5, 2000; July 7, 2000) ........................... 15

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) .............................................................................................. 7

*Remeron Direct Purchaser Antitrust Litig.*,
   No. Civ. 03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................................... 15, 28

*Rotuna v. West Customer Mgmt. Group, LLC*,
   No. 09–1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ................................................... 5

*Seidman v. Am. Mobile Sys.*,
   965 F. Supp. 612 (E.D. Pa. 1997) ........................................................................................... 24

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 05–720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ...................................................... 5

*Stop & Shop Supermarket Co.v. SmithKline Beecham Corp.*,
   No. Civ.A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) .............................. 17, 21, 25

*Weiss v. Mercedes-Benz of N.A., Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995) ....................................................................................... 17, 25

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... 1, 3
Fed. R. Civ. P. 54 ......................................................................................................................... 1

**Treatises**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ......................... 8
Manual for Complex Litigation (4th ed. 2004) ....................................................................... 8, 22

# I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiff Sherry Bodnar and Class Counsel[1] bring this motion seeking a combined award of attorneys' fees and expenses to Class Counsel in the amount of $9,246,972.59.[2] The requested award of 33 percent (or $9,075,000) of the $27.5 million settlement fund is fair and reasonable because it will compensate Class Counsel for its heavy investment of time, resources, and lost opportunity to work on other matters; because the fee is paid out of the common settlement fund created solely by efforts of Class Counsel; and because the requested award is in line with other awards in this District and Circuit, which employs the percentage-of-the-fund method to determine attorneys' fee awards to class counsel in class action settlements involving a common fund. Should the Court perform an optional cross-check by examining Class Counsel's lodestar in this Action, the lodestar multiplier of 4.69 is reasonable and consistent with fee awards in the Third Circuit. Moreover, to date, only *one* Settlement Class Member (out of more than 3 million) has filed an objection to the amount of attorneys' fees and expenses allowed under the Settlement Agreement—and that lone objection was filed by a professional objector seeking personal profit, not by an aggrieved class member. In any event, that objection is meritless because it is based upon out-of-date and/or inapplicable case law, as discussed in the concurrently filed Motion for Final Approval and herein, *infra*.

When Class Counsel first began the investigation that led to this Action, no similar claims had been brought before. Not only were similar claims untested, speculative, and new, but it took Class Counsel a substantial amount of pre-filing work just to determine the posting and

---

[1] All capitalized terms have the meaning set forth in the Settlement Agreement, Dkt. No. 73-2.

[2] A Proposed Order granting both this Motion and Plaintiff's Unopposed Motion for Certification of a Settlement Class and Final Approval of Class Action Settlement ("Final Approval Motion") was attached to the concurrently filed Final Approval Motion.

processing practices Bank of America ("BofA") appeared to be using—practices that were shrouded and difficult to decipher. Nonetheless, Class Counsel persisted in developing this case, relying on their unique expertise in consumer banking practices and litigation related thereto. Once the Action was on file, Class Counsel then persisted in overcoming the Bank's vigorous protestations that the case was wrong-headed; persisted in extensive discovery efforts; and persisted in driving the hard bargain that resulted in this Settlement. Not one other firm or governmental entity brought or prosecuted these claims.

In short, without Class Counsel's persistence, hard work, and investment of resources, Bank of America's alleged misconduct would have gone without recompense, fading into history. But because of Class Counsel's work, the Settlement Class here will enjoy the benefit of a large transfer of ill-begotten wealth from the Bank to consumers—$27.5 million—without having to lift a finger. In addition, the Bank will undertake meaningful injunctive relief, issuing an entirely new, clarifying disclosure regarding the practices brought to light by this lawsuit. The injunctive relief will give consumers the ability to judge for themselves whether or not they want to continue to do business with BofA—and validates Plaintiff's position that BofA's practices are something that, at least, consumers should be made aware of. This is a textbook case of the importance of class actions and of diligent class counsel: righting wrongs that would otherwise go unnoticed. But this work does not come without cost: the attorneys who prosecuted this action invested a huge amount of time, money, and lost opportunity to work on other matters—all without any guarantee of ever recouping those investments. It is now just, reasonable, and fair for Class Counsel to be rewarded for their efforts. Further, Plaintiff requests that she be awarded a class representative service award in the amount of $20,000, which is reasonable and consistent with other service awards entered in this District and Circuit.

Plaintiff respectfully requests that this Court grant the motion and award the requested fees and expenses to Class Counsel, and class representative service award to Plaintiff Bodnar. Defendant does not oppose the requested relief.

## II.     CLASS COUNSEL IS ENTITLED TO RECOVERY OF REASONABLE ATTORNEYS' FEES AND EXPENSES

It is well-settled that plaintiffs' attorneys in a class action lawsuit may petition the court for compensation for any benefits to the class that result from the attorneys' efforts. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980). Rule 23 expressly states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Further, the common-fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478. Here, Defendant does not oppose the fee request. Zavareei Decl., ¶ 69. Thus, the only question for the Court is whether this amount is reasonable.

There are two methods to determine whether a fee award is appropriate. The percentage-of-recovery method is used in cases involving a common fund, because it rewards counsel for success and penalizes counsel for waste or failure. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). The lodestar method is applied in statutory fee-shifting cases. *Id.*; *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 323 (D.N.J. 1997). Here, therefore, it is appropriate to judge the reasonableness of the requested fee award using the percentage of the fund method. In fact, Courts at all levels of the federal system, including the Supreme Court and at least nine Circuits (including the Third Circuit), have approved the use of the percentage method. *See, e.g.*, *Boeing*, 444 U.S. at 478-79; *In re Gen. Motors Corp.*, 55 F.3d at 821. Using that method reveals that the fee award request here is fair

and reasonable and should be approved. The Court may also conduct an optional cross-check, whereby it determines the lodestar multiple that would result from applying the percentage of the fund. Such an analysis in this case results in a lodestar multiple of 4.69, Declaration of Hassan Zavareei ("Zavareei Decl."), ¶ 65,[3] which is also reasonable under the applicable precedent and the facts of this case.

## A. The Requested One-Third Fee Award is Reasonable Under the Percentage of the Fund Method

The value of the settlement here is a cash payment of $27.5 million (with no possibility that that amount reverts in any way to Bank of America) *and* meaningful injunctive relief in the form of an entirely new disclosure issued by the Bank to its customers on the subject of this litigation. Even if the injunctive relief was ignored, the requested fee award would represent one-third of the total monetary benefits provided by the Settlement Agreement. If it were possible to monetize the value of the injunctive relief, the percentage recovery sought would likely be far lower. In any event, even one-third is a reasonable percentage. In the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund. *See Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09–905, 09–1248, 09–4587, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (citing *Lenahan v. Sears Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *19 (D.N.J. July 24, 2006)); *Adeva v. Intertek USA Inc.*, No. 09–1096, ECF No. 228 (D.N.J. Dec. 22, 2010) (thirty-four percent (34%)); *Bernhard v. T.D. Bank, N.A.*, No. 08–4392, ECF No. 40 (D.N.J. Feb. 3, 2010) (thirty-three percent (33%)); *see also, e.g., Rotuna v. West Customer Mgmt. Group, LLC*, No. 09–1608, 2010 WL 2490989, at *7–8 (N.D. Ohio June 15, 2010) (one-third); *Khait v. Whirlpool Corp.*, No. 06–6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20 2010) (thirty-three

---

[3] The Zavareei Declaration was attached as Exhibit 2 to Plaintiff's concurrently filed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Final Approval Motion").

percent (33%)); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05–720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (thirty-three percent (33%)).

As a court in this Circuit found recently, "[a]ttorneys' fees in the 30% range are not uncommonly awarded in the Third Circuit, and courts in this Circuit have awarded fees of more than 30%. *Further, the Court cannot simply overlook the injunctive relief also being afforded Plaintiffs when determining whether the percentage is reasonable.*" *Mirakay v. Dakota Growers Pasta Co.*, No. 13-CV-4429 JAP, 2014 WL 5358987, at *12 (D.N.J. Oct. 20, 2014), *appeal dismissed* (Dec. 11, 2014) (emphasis added) (approving a fee request that "would be approximately 36.8% of the mere cash value of the fund, and considering non-monetary, injunctive relief as well).

Moreover, unlike in many class action settlements, in which the vast majority of the possible settlement fund goes unused because payments are made only to class members who affirmatively submit a claim for payment, here every penny of the $27.5 million will actually be paid by Bank of America for the benefit of the Settlement Class. Still, even in claims-made settlements, which are exponentially less valuable to class members because the vast majority of settlement funds revert back to a defendant, courts often award a significant percentage of the *potential* size of the common funds as attorneys' fees. This is true even where claims rates are vanishingly low—and where the attorneys' fee award is actually more than the benefit being paid to the Class. For example, in *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 169-70 (3d Cir. 2013), "Defendants paid $35,500,000 into a settlement fund," and only "roughly $3,000,000 will be distributed to class members." *Id.* Still, the panel held that "[c]lass counsel should not be penalized" where "class members' individual damages are simply too small to motivate [some of] them to submit claims." *Id.*, 178. *See also Poertner v. Gillette Co.*, 618 F. App'x 624, 626,

628-30 (11th Cir. 2015) (affirming $5.68 million fee-and-cost award where claims-made amounted to only $344,850 in classwide relief); *Casey v. Citibank, N.A*., No. 5:12-CV-820, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) (overruling objection to requested $7 million fee in connection with claims-made settlement in which $110 million in relief was *available* to class members, but only about 11% of that amount was actually claimed, such that the attorneys' fees dwarfed the class recovery). When courts routinely grant one-third of *potential* common funds as attorneys' fees in cases where class counsel is paid more in attorneys' fees than the class itself recovers, a one-third fee award is certainly warranted here—where the class truly will benefit from the full $27.5 million, and where payments to the Settlement Class will dwarf the attorney fee award being sought by Class Counsel.

## B. All *Gunter* Factors Support the Award

In analyzing "percentage of the fund" fee requests, courts in this circuit apply the factors set forth by the Third Circuit in *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190 (3d Cir. 2000). Those factors include: (1) The size of the fund and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Id*. at 195 n.1. These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 301 (3d Cir. 2005). Applied here, these factors weigh strongly in favor of the requested fees and expenses award.

### 1. The Size of the Fund and Number of Persons Benefited Supports the Requested Award

With respect to the first factor, both the size of the fund and number of persons benefitted

support the requested fees and expenses. The Manual for Complex Litigation provides that "[g]enerally, the factor given the greatest emphasis [in awarding a percentage of the recovery] is the size of the [recovery] created, because [the recovery] 'is itself the measure of success … [and] represents the benchmark from which a reasonable fee will be awarded.'" Manual for Complex Litigation § 14.121 (4th ed. 2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547, 550 (4th ed. 2002)).

As discussed above and in Plaintiff's concurrently filed Final Approval Motion, the $27.5 million common fund will benefit approximately 3 million Class Members, without the Class Members having to submit a claim or take any other action. Each of these members will receive at least $5, and many will receive much more. Indeed, because the fund will be allocated based on the number of fees assessed, some Class Members will receive hundreds of dollars—without ever having to lift a finger. Again, this is not a case where a claims-made settlement limits the distribution of the fund to a tiny group of claimants. Moreover, all accountholders will benefit from meaningful prospective relief. The first *Gunter* factor weighs heavily in favor of the requested fee award.

2.  The Complete Lack of Real Objections Weighs in Favor of the Requested Award

With respect to the second factor, there has been only one objection to the attorneys' fees and expenses request—and that was filed by Dawn Weaver and her attorney Christopher Bandas, a notorious professional objector.  As described in the concurrently filed Request for Judicial Notice, courts across the country have taken a dim view of the objections made by Mr. Bandas, which are motivated by greed, not the best interests of the class members. *E.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) ("[A]ttorney Christopher Bandas, [is] a "professional" or "serial" objector . . . Bandas routinely represents objectors

purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.) (footnote omitted).

Here, approximately 3 million class members received notice, and not one (other than Mr. Bandas and his serial-objector client) complained in any way about the fee request. Thus, this factor weighs heavily in favor of granting the requested fees and expenses. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305 (holding that where only two class members objected out of a class of 300,000, this fact weighed in favor of the requested fee award); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 338 (E.D. Pa. 2007) (holding that "the total absence of objections to the requested fees weighs in favor of finding that the percentage of the settlement fund requested is appropriate").

Indeed, the total absence of non-professional objections is particularly compelling here because (1) the number of Class Members is large (more than 3 million), and (2) the Class Notice *explicitly advised* Class Members of the amount of the requested fees (33 percent).

3.   The Skill and Efficiency of the Attorneys Involved Weighs in Favor of the Requested Award

The third *Gunter* factor – the skill and efficiency of the attorneys involved – also weighs in favor of the requested fees and expenses. As noted above, Class Counsel developed and prevailed in a case where it is likely that the vast majority of Settlement Class Members did not and could not determine the alleged wrong undertaken by Defendant. Class Counsel defeated a motion to dismiss, engaged in extensive discovery efforts, and significantly strengthened the case with an amended complaint. This is the only case in the country, to date, to win any recovery for consumers on a legal theory regarding manipulation of holds and available balance calculations. The case, in short, was novel and difficult—and it took skillful attorneys to prevail.

Class Counsel's expertise allowed it to build a case no others have. Indeed, it may be that no other firm or group of firms in the country could have succeeded here—even if they had tried (which they have not). Tycko & Zavareei ("TZ") has successfully litigated and resolved several other consumer class actions against national banks. Dkt. No. 33 at 8-10; Dkt. No. 34, at 2 n.1. In addition, TZ has successfully negotiated class action settlements and has been appointed class counsel for settlement purposes in numerous other consumer cases involving major financial institutions and other large companies. Zavareei Decl., ¶¶ 2-22.

Employing this experience and skill, Class Counsel aggressively and swiftly worked to resolve this case in an efficient manner. *Id.*, ¶¶ 27-40. After conducting extensive discovery (based on their preexisting and specialized knowledge of bank overdraft processes), Plaintiffs were able to ascertain the risks associated with the case and the potential damages at issue. *Id.*, ¶¶ 30-35. Simultaneously, Plaintiffs worked with the Magistrate to begin settlement negotiations. *Id.*, ¶ 37. When those negotiations did not result in a resolution, Plaintiffs continued extensive discovery efforts and continued off-and-on negotiations with an experienced mediator. *Id.*, ¶ 38. In order to finalize the contentious settlement negotiations, Class Counsel sought the assistance of Magistrate Judge Wells. *Id.*, ¶¶ 39-40.

Through their unique skill and experience, Class Counsel was able to efficiently obtain an excellent result for the Class.

4. The Complexity and Duration of the Litigation Weighs in Favor of the Requested Fee Award

The fourth *Gunter* factor—the complexity and duration of the litigation—also weighs in favor of the requested fees and expenses. The claims in this action involved complicated debit processing issues relating to Defendant's consumer checking accounts. A tremendous amount of sleuthing was necessary to even determine what practices the Defendant was using, and how it

was using those practices to increase the number of overdraft fees charged to consumers. Zavareei Decl., ¶ 52. Moreover, the case also raised a number of threshold legal issues which required significant research and analysis, as reflected by the extensive briefing on the motion to dismiss. The complexity of these issues amply supports the requested award, particularly in light of the skillful and efficient manner in which Class Counsel handled those issues and brought the case to a successful resolution on behalf of the Class.

The fact that this action was initiated in June, 2014, over two full years ago, further supports the requested attorneys' fees and expenses. As this Court is well-aware from the record in this case, the issues in this case were fiercely contested by both sides. The Parties did not even begin to negotiate until after the motions to dismiss were decided and discovery was undertaken. Zavareei Decl., ¶ 36. Based on the Court's order and the discovery provided in this case Class Counsel was able to intelligently analyze the size and scope of the class claims, as well as the strength and weaknesses of those claims, prior to negotiating a settlement. *Id.*, ¶ 53. In short, this is not a case where the Parties rushed to the settlement table or hastily negotiated a deal. To the contrary, there was significant motion practice and discovery prior to mediation, and it took almost 10 months from the date of the first settlement conference and over seven months since the parties' mediation before Judge Phillips before the Parties were able to reach a comprehensive written settlement agreement that they could present to the Court for preliminary approval. *Id.*, ¶¶ 30-40, 63. This factor also weighs in favor of the requested fee award.

5.   The Risk of Nonpayment Was Substantial

The fifth *Gunter* factor—the risk of nonpayment—also supports the requested award. Although this Court denied Defendant's motion to dismiss and found that Plaintiff had stated plausible claims, it is uncertain whether Plaintiff would have prevailed on the merits of those

claims based on an evidentiary record. Again, the case theory was novel and untested. No settlement had been reached on similar claims elsewhere. Throughout the litigation, Defendant has maintained that no contractual provision was ever breached. If this action had proceeded through litigation, this would have been a hotly contested issue. Defendant also asserted numerous legal defenses to Plaintiff's claims. Moreover, Defendant almost certainly would have opposed certification of a class for litigation purposes in this case. These risks are highly relevant to the requested award because Class Counsel handled the case on a contingent fee basis, without any guarantee that they would be compensated for their extensive time investment or reimbursed for their expenses. It is only because Class Counsel agreed to accept these risks that they were able to represent Plaintiffs and achieve a favorable class settlement in this case. Accordingly, this factor also weighs in favor of the requested award.

6. <u>Class Counsel Have Devoted Substantial Time and Effort to this Action</u>

The sixth *Gunter* factor also supports the requested award, as Class Counsel have invested significant time and effort in this action. Specifically, in connection with the present action, Class Counsel (1) investigated the facts and law relating to Plaintiff's claims before initiating this action; (2) drafted a well-pleaded Complaint and Amended Complaint; (3) met and conferred with Defendants' counsel at the start of the case pursuant to Rule 26(f), and assisted in preparing a Rule 26(f) Report to the Court; (4) engaged in extensive briefing in connection with two separate and independent motions to dismiss; (5) served Interrogatories and Requests for Production after Defendant's motions to dismiss was denied; (6) prepared search terms for electronically-stored information ("ESI"); (7) reviewed each of the tens of thousands of pages of documents (as well as the information) produced by Defendant in this case; (8) took two Rule 30(b)(6) depositions and three additional depositions of Bank employees; (9) negotiated a

protective order relating to the use of the confidential documents and information produced by Defendant in this case; (10) prepared a lengthy mediation statement; (11) attended a settlement conference with Magistrate Judge Wells (Dkt. No. 39) (12) attended a full-day mediation with Layn Phillips and participated in several follow-up conferences with Judge Phillips and opposing counsel, as well as with Magistrate Judge Wells (Dkt Nos. 41, 54, 64); (13) negotiated the details of a comprehensive Settlement Agreement over a period of almost 10 months and drafted the Settlement Agreement; (14) prepared the exhibits to the Settlement Agreement (including the Notice and proposed Preliminary Approval Order); (15) prepared a motion for preliminary approval of the Settlement; (16) regularly communicated with the Settlement Administrator to ensure a smooth notice process following the Court's preliminary approval order; (17) reviewed the language and content of the settlement website; (18) reviewed and edited scripts for the automated telephone hotline; (19) responded to Class Members who contacted Class Counsel directly or who were forwarded to Class Counsel by the Claims Administrator; (20) communicated with the named Plaintiff throughout the litigation; and (21) prepared the present motion. Zavareei Decl., ¶ 63. In addition, Class Counsel will devote further time and effort to appearing at the final approval hearing, responding to ongoing inquiries from Class Members going forward, and monitoring the distribution of settlement payments by the Settlement Administrator. *Id.*, ¶ 65. All in all, Class Counsel spent 2,958.35 combined hours on this case to date. *Id.*, ¶ 62.

These combined efforts amply support the requested award in this case, and demonstrate that the fees which will paid to Class Counsel under the Settlement have been well earned.

7. <u>The Requested Award Is Reasonable in Comparison to the Amounts Typically Awarded in Other Class Cases</u>

Finally, the seventh *Gunter* factor—awards in similar cases—also supports the requested

award. Fee awards of one-third are commonly awarded in this Circuit.

Courts within the Third Circuit frequently award fees of one-third of the value of class action settlements. *In re Tricor Direct Purchaser Antitrust Litig.*, Civ. A. No. 05-340, slip op. at 9-10 (ECF No. 543) (D. Del. Apr. 23, 2009) (awarding one-third fee on settlement of $250 million); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013) (awarding one-third fee on settlement of $150 million); *Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *17 (D.N.J. Nov. 9, 2005) (awarding one-third fee on settlement of $75 million). *See also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (citing Judge O'Neill's award of one-third of the settlement fund for attorneys' fees in *Perod v. McKenzie Check Advance of Pennsylvania*, No. 98–CV–6787 (ECF Nos. 61, 65) (E.D. Pa. June 5, 2000; July 7, 2000)). In *In re Ravisent Techs., Inc. Sec. Litig.*, for example, Judge Surrick noted that "courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (referencing *In re CareSciences, Inc. Sec. Litig.*, Civ. A. No. 01–5266 (Dkt. No. 37) (E.D. Pa. Oct. 29, 2004) (awarding one-third recovery of $3.3 million settlement fund, plus expenses)). In *Johnson v. Cmty. Bank, N.A.,* No. 3:12-CV-01405, 2013 WL 6185607, at *8 (M.D. Pa. Nov. 25, 2013), a case regarding overdraft fees, the court held that "[a]n award of one-third of the settlement is consistent with this Court's prior decisions and with cases decided throughout the Third Circuit." (citing *Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, 2008 WL 906472, at *5 (M.D. Pa. 2008) (collecting cases)). The award in this case is in line with these well-reasoned awards in other cases.

When courts deviate from a 33% attorney fee request, they usually do so only where a significant malady exists with the settlement, or in a so-called "mega-fund" settlement, in which

attorneys' fees would become too large if based strictly on a percentage of settlement fund. In general, in those "mega-fund" cases, as the size of the settlement fund increases, the percentage of the award decreases. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 339 (3d Cir. 1998) (citing *In re First Fidelity Bancorporation Sec. Litig.*, 750 F.Supp. 160, 164 n.1 (D.N.J. 1990)). But this case does not involve a settlement award that is so large as to necessitate an automatic reduction in the percentage award. The *Prudential* recovery was in excess of $1 billion, and the Third Circuit cited to the trial court's analysis of settlements above $100 million for establishing the inverse relationship principle. *See In re Prudential*, 148 F.3d at 339 (referencing *In re Prudential,* 962 F. Supp. 572, 585 (D.N.J.1997)). It is the "mega-funds," those in excess of $50 million, which tend to be at the low end of this sliding scale. *In re Rent–Way Sec. Litig.*, 305 F. Supp. 2d 491, 513 n.5 (W.D. Pa. 2003) (citing cases). *See Weiss v. Mercedes-Benz of N.A., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) ($75 million settlement); *Stop & Shop Supermarket Co.v. SmithKline Beecham Corp.*, No. Civ.A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ($100 million settlement). This is not a mega-fund. At $27.5 million, this proposed settlement fund is big enough to benefit the class members but not large enough to qualify for a mega-fund reduction in fees.

8. Application of the Prudential Factors Supports the Requested Fee Award

In addition to the *Gunter* factors discussed above, courts in the Third Circuit consider the factors articulated in *In re Prudential Ins. Co. of Am. Sales Practice Litig*. These factors are (1) whether the benefits accruing to the class are attributable to the efforts of class counsel or other groups, such as government agencies; (2) whether the fee is comparable to the fee that would have been negotiated had the case been subject to a contingent fee agreement; and (3) whether

the settlement agreement contains innovative terms and conditions. 148 F.3d at 337-40. These factors further support the requested award in this case.

With respect to the first *Prudential* factor, the results obtained are solely the result of Class Counsel's efforts. Class Counsel is not aware of any other litigation against Defendant alleging the same or similar allegations, or of any governmental agency that was investigating Defendant or any other party for the same or similar practices. Zavareei Decl., ¶ 59.

The second *Prudential* factor also weighs in favor of the requested award. Here, the requested award is in line with a typical contingent fee arrangement. Indeed, Plaintiff Bodnar's retention agreement calls for the identical contingent fee (had there been an individual, non-class settlement) as requested here: Plaintiff Bodnar agreed that her attorneys would be entitled to one-third of any recovery. Zavareei Decl., ¶ 66.

Finally, the third *Prudential* factor also supports the requested award, as the Settlement in this case provides first-of-a-kind relief for the practices at issue in connection holds and available balance posting practices. It also provides new, first-time disclosures to consumers to alert them to the practices. As noted above, Plaintiff is unaware of any other case against Defendant—or any other bank—relating to these practices. Thus, the relief provided by the Settlement is unique.

9. A Lodestar Cross-Check Supports the Requested Fee Award

The Third Circuit recommends, but does not require, that district courts using the percentage of the fund method conduct a lodestar cross-check on the reasonableness of the fee award. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 183 n.4 (3d Cir. 2005) (affirming district court's percentage of the fund fee award, even though district court did not conduct lodestar cross-check); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 310 (E.D. Pa. 2003) (holding that *Gunter* recommends but does not require lodestar cross-check). Where

district courts do conduct a lodestar cross-check, the Third Circuit has cautioned that this crosscheck "*does not trump the primary reliance* on the percentage of the common fund method." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d at 307 (emphasis added). Moreover, the lodestar cross-check "need entail neither mathematical precision nor bean counting," and the "resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id*. at 306-07. Thus, the "lodestar cross-check is only meant to be a *cursory overview*." *O'Keefe*, 214 F.R.D. at 310 (emphasis added). "The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d at 306–07 (footnoted omitted) (citing *Prudential,* 148 F.3d at 342). As one court emphasized, "this is only a cross-check and not a full lodestar analysis." *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *15 (E.D. Pa. June 2, 2004), *amended*, No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

The Third Circuit explained that "multipliers may reflect the risks of non-recovery facing counsel, may serve as an incentive for counsel to undertake socially beneficial litigation, or may reward counsel for extraordinary result. By nature they are discretionary and not susceptible to objective calculation." *In re Prudential,* 148 F.3d at 340.

In the present case, Class Counsel's current lodestar in this action is $1,833,795.95, which is based on 2,968.85 attorney and professional staff hours. Zavareei Decl., ¶ 62. Class Counsel has attached timekeeping summaries demonstrating that a total of 2,968.85 hours have been expended. *Id*. Class Counsel affirms that all time entries that counsel believes are redundant, excessive, or non-essential to the action have been eliminated. *Id*., ¶ 67. Moreover, this lodestar amount does not include time to prepare for and attend the final fairness hearing, litigate any appeal from the objector Weaver (and her attorney, professional objector Bandas),

and to continue to supervise the distribution of the settlement fund (including working with the Settlement Administrator, corresponding with Settlement Class Members, and working with opposing counsel and the Court in the event of a secondary distribution to Settlement Class Members and/or a *cy pres* distribution)—activities which Class Counsel estimates will result in approximately $100,000 additional lodestar. *Id*., ¶ 65. Based on the estimated total lodestar, the lodestar crosscheck results in a multiplier of 4.69. Given that the lodestar multiplier is merely a cross-check (not the method of determining the appropriateness of the fee), a 4.69 multiplier in this difficult and novel case is well within the range of reasonableness. *See In re Linerboard*, 2004 WL 1221350, at *16 (noting that "during 2001–2003, the average multiplier approved in common fund class actions was 4.35"). *Meijer, Inc. v. 3M*, No. 04–5871, 2006 WL 2382718 at *24 (E.D. Pa. Aug. 14, 2006) (approving a percentage fee award that translated to a 4.77 multiplier).

Moreover, a 4.69 multiplier is well lower than many multipliers that have been approved in this circuit. For example, the court approved an attorney fee award that produced a multiplier of 15.6 in *Stop & Shop Supermarket Co.*, 2005 WL 1213926, at *18. In *In re Cendant Corp. Sec. Litig*., the Third Circuit stated that the fee award challenged on appeal "would appear to lead to a multiplier in the mid-single digits," 404 F.3d at 183 n.4, and then affirmed the fee award without further discussion of the multiplier. Similarly, in *In re Rite Aid Corp. Sec. Litig*., 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005), the Court approved a fee award that resulted in a multiplier of 6.96. Further, the court in *O'Keefe* found that multiplier of 6.08 was not "unreasonable." 214 F.R.D. at 311. Indeed, even in a mega-fund case where counsel requested $50 million in attorneys' fees, a court in this district granted that fee request where the lodestar multiplier was 3. *In re Flonase*

*Antitrust Litig.,* 951 F. Supp. at 751. Accordingly, the multiplier resulting from the lodestar cross-check in this case is well within the range of multipliers that have been approved.

The multiplier in this case reflects the fact that Class Counsel was highly efficient in litigating and resolving this potentially drawn out litigation. That is why the percentage of the fund approach is the key measure—so that Class Counsel is incentivized to obtain excellent results efficiently, not to run up a big bill with meager results. As the Third Circuit stated in *Gunter*, one purpose of the percentage of the fund approach is "to encourage early settlements by not punishing efficient counsel . . ." *Gunter*, 223 F.3d at 198 (quoting Manual for Complex Litigation, § 24.121, at 207). Applying this principle, the Third Circuit held that "[p]rocuring a settlement, in and of itself, is never a factor that the district court should rely upon to reduce a fee award." *Id*. Moreover, "[t]o utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Id*. These important public policies would be undermined by reducing Class Counsel's request for an award resulting in a relatively modest lodestar multiplier:

> [S]imply judging the attorney's settlement award by the amount of hours that class counsel worked overlooks the fact that the class itself has an interest in speedy litigation. Even if settlement had been effected six months after the time at which it actually was effected, it is unlikely that the class members would have received a greater recovery, whereas counsel's expenses and time expended would only have increased. This would allow a calculation producing a lower hourly rate for counsel, but it would not confer any additional benefit on the class. Counsel should therefore not be penalized for settling early—when the ratio of attorney's award to time spent is relatively high—if delaying settlement would lower his hourly rate but would not result in gains to the class that counsel serves.

*Creed v. Benco Dental Supply Co.*, No. 3-12-CV-01571, 2013 WL 5276109, at *6 (M.D. Pa. Sept. 17, 2013). In short, a lodestar cross check, if the Court chooses to engage in such an exercise, indicates the fee request is reasonable.

The foregoing discussion indicates Class Counsel's request of 33% of the common fund its efforts created is reasonable and should be approved.

10. <u>The One Objection to the Fee Request Is Meritless</u>

Bandas complains about the amount of the attorneys' fee request, which he calls "exorbitant," Doc 78, at 16, because it exceeds what Bandas describes as the "25% benchmark for common fund settlements." There is one problem with this argument: there is no such "benchmark." Indeed, just 7 months ago, the Third Circuit rejected an objection filed by Lightman & Manochi—Bandas' local partner in the instant objection—to a 33% fee award. The panel upheld that 33% fee award even though the attorneys' fee award in the claims made settlement was *four times the amount actually paid out to class members*:

> The Objectors also observe that class counsel will receive approximately 75% of all amounts being paid out to settle the class action and that the fee award is more than three and a half times the amount actually received by the class members. We, however, conclude that the Magistrate Judge did not abuse her discretion.

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 15-2485, 2016 WL 611441, at *1-2 (3d Cir. Feb. 16, 2016).

Ignoring this holding, Bandas persists in making his nonsensical argument that there is a 25% "benchmark" in the Third Circuit. As support, Bandas cites two cases that are nearly 20 years old, and another that is 10 years old—cases which predate virtually all the authority to the contrary cited above by Plaintiff, including more recent authority from the Third Circuit itself. *Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 623 (E.D. Pa. 1997); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 323 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581 (3d Cir. 1999). In sum, Bandas' 20-year old "authority" is all actually against the true weight of authority in this Circuit. And Bandas fails to inform the Court that in his third case, the ten-year-old *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 524 (E.D. Pa.

2007), the court *granted* the full fee award requested by counsel—and in doing so, specifically

found that "awards above [25%] are common" (citing *Godshall v. Franklin Mint Co.*, No. 01–

6539, 2004 WL 2745890 at *6 (E.D. Pa. Dec. 1, 2004) (33% approved); *In re FAO Inc. Sec.*

*Litig.*, No 03–942, 2005 WL 3801469 at *25 (E.D. Pa. May 20, 2005) (33% approved)).

Moreover, Bandas entirely ignores the benefit to the Class of the meaningful injunctive

relief achieved by Plaintiff. If that entirely new disclosure could be valued monetarily, it is likely

Class Counsel's fee request would come in well *under* the illusory 25% "benchmark" Bandas

argues for. But Bandas improperly ignores this benefit altogether.

In urging the Court to reduce Class Counsel's fee request, Bandas cites six cases where,

he argues, Courts made appropriate fee reductions. Two of those six cases are so-called "mega-

fund" cases with settlements in excess of $50 million, which as discussed above, normally result

in lower fee recoveries. *See Stop & Shop Supermarket Co.*, 2005 WL 1213926 ($100 million

settlement); *Weiss*, 899 F. Supp. 1297 ($75 million). Those cases are inapposite on their face. In

the third of Bandas' cases, *Fitzgerald v. Gann Law Books et al*, 11-cv-4287, 2014 WL 8773315

(D.N.J. Dec. 17, 2014), a case involving the different fee jurisprudence applicable to Telephone

Consumer Protection Act cases, class counsel sought $1.08 million in attorneys' fees from a

common fund that was only $1,145,000. In that case, only 303 class members made claims, and

only $130,000 in cash was to be paid to class members, while Class Counsel sought over $1

million in fees. As the court stated, "the proposed attorneys' fees award of $1.08 million

represents not 33%, but approximately 84% of the settlement's value" and "approximately 5.5

times what the entire class will receive in cash and non-cash benefits." *Id.* at 15, 25. Still, the

court held that "attorneys' fees that exceed the class recovery are not per se unreasonable"—and

went on to grant a fee award of $400,000, or more than double what the class received in that

case. *Id. Fitzgerald*, in other words, represented an outlier fee request. There is nothing similar about this settlement, where, after fees and expenses, the entire $27.5 million fund will be paid to the class—and where that payment to the class dwarfs the size of the fee request here. Bandas' fourth case, remarkably, is the 1986 decision in *Muchnick v. First Federal*, No. 86-1104, 1986 WL 10791 (E.D. Pa. Sept. 30, 1986), where the settlement fund was valued at between $4 and $6.8 million, and where class counsel sought $250,000 in fees, *which amounted to a lodestar multiplier of 8.4.* In granting the full $250,000 fee request, the court found that "the requested fee is eminently reasonable under the circumstances of the case, and can be justified under the lodestar method of calculation." *Id.* at *1. *Muchnick* doesn't support Bandas at all—to the contrary, it shows just how reasonable Class Counsel's requested multiplier of 4.69 is here. Next, Bandas argues that in *Frederick v. Range Res.-Appalachia, LLC*, No. C.A. 08-288 ERIE, 2011 WL 1045665, at *1 (W.D. Pa. Mar. 17, 2011), the court "award[ed] $4,650,382 in fees from a settlement fund valued at $22 million, 20.58%." Doc. 78 at 17. What Bandas fails to tell the Court is that is precisely the amount that class counsel requested. Moreover, the class' recovery was a complicated formula based on future gas production. Only $1,750,000 was an immediate cash payment. *Id*. Finally, the *Hawthorne v. Umpqua* case cited by Bandas is from the Northern District of California, which has an entirely different fee jurisprudence.

In the end, not one of Bandas' cases even comes close to holding that there is a 25% benchmark, or to supporting his view that the fee request is "excessive." For an objector with so many objections under his belt, his total inability to cite persuasive authority in support of his argument is telling. The objection to the fee award should be overruled.

## III.     CLASS COUNSEL IS ENTITLED TO RECOUP COSTS REASONABLY EXPENDED DURING THE LITIGATION

The Third Circuit recognizes that attorneys who create a common fund for the benefit of

a class are entitled to reimbursement from the fund of the reasonable litigation expenses

advanced on behalf of the class. *See, e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732

n.12 (3d Cir. 2001) (quoting the 1985 Task Force Report for the conclusion that the "common-

fund doctrine . . . allows a person who maintains a lawsuit that results in the creation,

preservation, or increase of a fund in which others have a common interest, to be reimbursed

from that fund for litigation expenses incurred"); *see also In re AT&T Corp., Sec. Litig.*, 455

F.3d 160, 172 n.8 (3d Cir. 2006) ("[e]xpenses are generally considered and reimbursed

separately from attorneys' fees"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 263

(D. Del. 2002) (approving costs and expenses reimbursements out of litigation fund as

reasonable). Courts routinely approve such expenses incurred in the prosecution of complex

cases. *See, e.g. In re OSB Antitrust Litig.*, Civ. A. No. 06-826, slip op. at 9 (ECF No. 947) (E.D.

Pa. Dec. 9, 2008) (approving class counsel's fee request because "[t]his complex lengthy matter

involved some eighty depositions, the creation and maintenance of a huge case database, and the

preparation and review of expert economic analyses and reports"); *Remeron Direct Purchaser

Antitrust Litig.*, 2005 WL 3008808, at *17 (finding the following expenses to be reasonable:

"'(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies,

(5) messengers and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8)

filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a

mediator, and (12) NJ Client Protection Fund—pro hac vice'") (quoting *Oh v. AT&T Corp.*, 225

F.R.D. 142, 154 (D.N.J. 2004)).

Here, Class Counsel incurred expenses in the amount of $171,972.59. Zavareei Decl., ¶

66. As the Zavareei Declaration indicates, the vast majority of these expenses were spent on

depositions, to attain the services of a well-qualified data expert to review and analyze

Defendant's account data, and for mediation expenses with one of the top private mediators in the country. *Id.* These expenses were all necessary to the pursuit of this litigation, and to reaching the excellent Settlement now before the Court. According, the Court should order the expenses reimbursed.

## IV.     THE REQUESTED SERVICE AWARD IS REASONABLE

Courts recognize the purpose and appropriateness of service awards to class representatives. See, e.g.,  *In re Residential Doors Antitrust Litig*., Civ A. Nos. 94-3744, 96-2125, MDL 1039, 1998 WL 151804, at *9 (E.D. Pa. Apr. 2, 1998) (approving awards of $10,000 each to four class representatives); *In re Linerboard Antitrust Litig*., 2004 WL 1221350, at *19 (approving awards of $25,000 for each of five class representatives); and *Mayer v. Driver Solutions, Inc.*, Civ. A. No. 10-1939, 2012 WL 3578856, at *5 (E.D. Pa. Aug. 17, 2012) (approving $15,000 service award for class representative). Courts "award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

In *Mirakay v. Dakota Growers Pasta Co.*, the court approved a combined $20,000 incentive award for three plaintiffs, finding that plaintiffs had been active participants in litigation which resulted in a $5 million common fund:

> The individual Plaintiffs herein as well as Ms. Weiss from the Minnesota action have been actively involved in this matter and fully committed to pursuing their claims. In participating in this action, these Plaintiffs have helped investigate the claims, reviewed and approved pleadings, maintained regular telephonic and email communications with counsel regarding strategy and developments in the case, reviewed and commented on submissions to the Court and mediator, reviewed and approved the retention of experts, and participated in mediation and settlement discussions on behalf of the class.

2014 WL 5358987, at *15. The same can be said for Plaintiff Bodnar here, except that Ms. Bodnar's efforts resulted in a $27.5 million settlement fund—over five times the size of the fund in *Dakota Pasta Growers*. Indeed, unlike the plaintiffs in that case, Ms. Bodnar is even more deserving of a service award, since she prepared for and sat for an extensive deposition by Bank of America—a deposition that delved into many personal, intimate aspects of Ms. Bodnar's life (including, but not limited to, personal financial details, family tragedies and personal habits) and which caused Ms. Bodnar to numerous personal days away from work. Zavareei Decl., ¶ 43. In short, although the requested service award is on the high end of the spectrum, Ms. Bodnar's efforts, dedication, and personal sacrifice are a key reason this Settlement is before the Court today, and she should be awarded a $20,000 service award.

## V.    CONCLUSION

For these reasons, and those detailed herein, Plaintiff respectfully requests that the Court award Class Counsel attorneys' fees in the amount of $9,075,000, litigation expenses in the amount of $171,972.60, and a class representative service award to Plaintiff Bodnar in the amount of $20,000.

Dated: July 5, 2016

 /s/ Hassan Zavareei
Hassan A. Zavareei (*pro hac vice*)
Jeffrey Kaliel (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

*Lead Class Counsel*

Jeffrey M. Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I, Hassan Zavareei, hereby certify that the foregoing document was filed via the Court's CM/ECF system on July 5, 2016, thereby causing a true and correct copy to be served on all ECF-registered counsel of record.

 /s/ Hassan A. Zavareei 
Hassan A. Zavareei