IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERRY L. BODNAR, on behalf of herself and all others similarly situated, | : : : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 14-3224 |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Defendant. | : | |

**ORDER**

**AND NOW**, this 4th day of August, 2016, this court having on February 5, 2016 granted

preliminary approval to the proposed class action settlement set forth in the Class Action

Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement") between

Plaintiff Sherry Bodnar ("Plaintiff"), on behalf of herself and the Settlement Class, and Defendant

Bank of America, N.A. ("Bank" "Bank of America" or "Defendant") (Plaintiff and Defendant are

referred to collectively as the "Parties"), *see* Order (Doc. No. 75); and the court having also on that

date preliminarily certified the Settlement Class for settlement purposes, approved the procedure

for giving Class Notice to the members of the Settlement Class, and set a final approval hearing to

take place on August 3, 2016, *see id.*; and the Parties having filed consent motions for certification

of a settlement class and final approval of class action settlement (Doc. No. 82) and for attorneys'

fees and class representative service awards (Doc. No. 84), as well as a request for judicial notice

(Doc. No. 83); and one Settlement Class Member having filed both an objection (Doc. No. 78) and

opposition to the Parties' consent motions (Doc. No. 85); and on August 3, 2016, the court having

held a duly noticed final approval hearing to consider: (1) whether the terms and conditions of the

Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered

dismissing the Plaintiff's amended complaint on the merits and with prejudice in favor of the

Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; (3) whether the Settlement Class should be certified for settlement purposes only; (4) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the Settlement Class; (5) whether and in what amount to approve a Service Award to Plaintiff, and (6) all other issues raised in the aforementioned filings; and the court having given careful consideration to all arguments raised at the hearing and in related filings; accordingly, it is hereby **ORDERED** that the motions to certify the class and settlement agreement (Doc. No. 82), and for attorneys' fees and class representative service awards (Doc. No. 84), are **GRANTED**[1] as detailed in this order.  In support of this order, the court finds as follows:

1.      The court finds that the Class Notice[2] substantially in the form approved by the court in its Preliminary Approval Order was given in the manner ordered by the court, constitutes the best practicable notice, and was fair, reasonable, and adequate;

2.      The court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the court has subject-matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order;

3.      The Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Litigation" or the "Action") and of the strengths and weaknesses of their respective positions. The Settlement Agreement was reached after the Parties participated in an extensive mediation overseen by mediator Judge Layn Phillips (Ret.), in addition to settlement conferences and follow-up conferences with Magistrate Judge Wells.  Prior to the mediation, the Action was vigorously

---

[1] Except as to the amount of the representative service award, as set forth in paragraph 18 of this order.
[2] Capitalized terms used in this order and not separately defined in this order refer to terms defined in the Settlement Agreement.

litigated.  Defendants filed and the court decided a motion to dismiss and the Parties engaged in

extensive discovery, including written discovery, depositions of corporate representative and fact

witnesses, and the production of relevant contracts, documents, aggregate class data, and other

information by Defendant.  Counsel for the Parties were therefore well positioned to evaluate the

benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of

protracted litigation with respect to numerous difficult questions of fact and law;

4.      The court finds that the prerequisites for a class action under Federal Rule of Civil

Procedure 23(a) have been satisfied for settlement purposes for each Settlement Class Member in

that: (a) the number of Settlement Class Members is so numerous that joinder of all members

thereof is impracticable, (b) there are questions of law and fact common to the class with respect to

Bank's overdraft fee policies and practices at issue, (c) Plaintiff's claims are typical of those of the

Settlement Class, and (d) Plaintiff and her counsel have fairly and adequately represented the

interests of the Settlement Class, and will do so in connection with the Settlement Agreement;

5.      The court further finds that the Settlement Class meets the criteria for certification

under Federal Rule of Civil Procedure 23(b)(3).  The aforementioned common issues predominate

over any individualized issues, and resolution of this action as a class action is superior to

alternative methods of adjudicating the claims of the members of the Settlement Class;

6.      Pursuant to Federal Rule of Civil Procedure 23, this court finally certifies the

Settlement Class, as identified in the Settlement Agreement, which shall consist of the following:

> All Bank of America consumer checking Account holders in the United States
> who, from May 25, 2011, through the date of preliminary settlement approval,
> were charged Overdraft Fees on transactions that were authorized and approved
> when sufficient funds were available to cover the amount of authorization.

Excluded from the Settlement Class are all persons who meet the criteria for the Settlement Class who submitted a timely and proper request to be excluded from the Settlement Class.  Such  persons are listed on Exhibit A, attached hereto;

7.      The court finally appoints the law firm of Tycko & Zavareei LLP, as Lead Class Counsel for the Settlement Class, and the court finally appoints the law firms of Tycko & Zavareei LLP, Kopelowitz Ostrow, and Shepherd, Finkleman, Miller & Shah LLP as Class Counsel;

8.      The court finally designates Plaintiff Sherry Bodnar as the Class Representative for the Settlement Class;

9.      The court finds that the distribution of the Class Notice via email and U.S. Mail, the creation and maintenance of the toll-free call center, and the creation and maintenance of the settlement website, all as provided in the Settlement Agreement and Preliminary Approval Order, (a) constituted the best practicable notice under the circumstances to Settlement Class Members, (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (c) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (d) complied fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, the Rules of this court, and any other applicable law.  The Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the proposed settlement;

10.     After evaluating the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1985)[3] and various *Prudential* factors,[4] the court deems the Settlement Agreement finally approved

---

[3] The Court must assess the following nine, non-exhaustive factors, to determine whether a proposed settlement is fair, reasonable, and adequate in accordance with Rule 23(e): (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the

as fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23(e). Each of the relevant factors weigh in favor of Final Approval of this Settlement Agreement. The court finds that the Settlement Agreement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel, in conjunction with Magistrate Judge Wells and an experienced private mediator. Further, an analysis of the factors related to fairness, adequacy, and reasonableness demonstrates that the Settlement is more than sufficient under Rule 23(e), such that Final Approval is warranted. The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

11.     With regard to the complexity and duration of the litigation, the court finds that continued litigation here would be difficult, expensive, and time consuming. Recovery by any means other than settlement would require additional years of litigation in this court and likely the Third Circuit Court of Appeals;

12.     The overwhelmingly favorable reaction of the Settlement Class to the Settlement supports final approval. Following the completion of the Notice Program, there has been only one objection to the Settlement, a clear indication that the Settlement Class Members support the

---

risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all of the attendant risks of litigation. *Id.*

[4] Additional factors the Court may consider include: the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *See In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

Settlement.  Further, only 49 of the approximately 3 million members of the Settlement Class have requested to be excluded;

13.     The Settlement Agreement is also fair and reasonable given the current stage of the proceedings.  Plaintiffs and Class Counsel settled the Action with the benefit of an analysis of key documentation and data regarding Bank of America's Overdraft Fee revenue on the transactions at issue, as well as detailed information regarding its policies and practices during the relevant time period. The review of this information and data positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. In addition, the Parties engaged in a full day formal mediation before an experienced and respected mediator, Judge Layn Phillips (Ret.), and appeared before Magistrate Judge Wells for a settlement conference and follow-up assistance with negotiations.  Following the mediation with Judge Phillips, the parties and Judge Phillips engaged in substantial communications through the mediation process for months afterwards, leading to final settlement.  Accordingly, Plaintiffs and Class Counsel had sufficient information to act intelligently in negotiating the terms of the Settlement that are before the court for approval;

14.     Litigation risks could easily have impeded Plaintiffs' and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal.  The risks of maintaining this Action as a class action through trial provides additional support to Plaintiff's and Class Counsel's position that the Settlement should be approved.  Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement reached with Bank of America outweighs the risk of continued litigation;

15.     The Settlement Agreement is also within the range of reasonableness in light of the best possible recovery and all of the attendant risks of litigation. Plaintiffs' $27,500,000 recovery is outstanding, given the complexity of the litigation and the significant barriers that would loom in the

absence of settlement: motions for summary judgment; trial; and appeals even if the Plaintiff won a verdict. Class Counsel represents that Plaintiff and the Settlement Class are recovering a cash fund of between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, without further risks attendant to litigation. That is a significant achievement considering the obstacles that Plaintiff faced in the litigation. The $27,500,000 Settlement is a fair and reasonable recovery for the Settlement Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement;

16.    The court has considered and rejected the objections lodged by Dawn Weaver. Specifically, the court rejects the objection that the informational requirements placed on objectors are improper. Further, the court finds that class counsel have submitted sufficient information for the court to evaluate the fairness of the Settlement. The court additionally rejects objector's argument that the costs of notice were required to have been disclosed to the Settlement Class Members. The court also finds that objector's contention regarding the average value of the Settlement to the Settlement Class Members is factually incorrect and, moreover, the complaint that a settlement should have somehow been better is not proper grounds for objecting to a settlement. Next, the court finds that objector's complaint regarding a purported non-disclosure regarding *cy pres* is without merit, as there is no guarantee that a *cy pres* award will occur, and if there is to be a *cy pres* award, it will be subject to court approval. Next, the court finds that there is no intra-class conflict. Next, the 33% attorneys' fee award in this case is not "exorbitant," as objector's assertion that a "25% benchmark" exists for common fund settlements is inconsistent with Third Circuit case law. Next, the court rejects objector's contention regarding the absence of procedure to object to the attorneys' fee and cost award, as objector has, in fact, mounted such an objection. And finally, the court rejects objector's assertion that an attorneys' fee award is subject to judicial allocation, as,

normally, the distribution of attorneys' fees among class counsel is a private matter for the attorneys

to resolve amongst themselves;

17.     The Parties are hereby **DIRECTED** to implement and consummate the Settlement

Agreement according to its terms and provisions;

18.     Pursuant to Federal Rule of Civil Procedure 23(h), the court hereby awards Class

Counsel for the Settlement Class attorneys' fees and expenses in the amount of $9,246,972.59

payable pursuant to the terms of the Settlement Agreement. The court also approves a service

award payment to Plaintiff in the amount of $10,000:[5]

a.     While there is no general rule, the Third Circuit has observed that attorneys'

fee awards generally range from 19 to 45 percent of the settlement fund. *See In re Gen.

Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).

Class Counsel's request for attorneys' fees equivalent to 33% of the Settlement Fund is

granted as being both appropriate and reasonable under the factors set forth in *Gunter v.

Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000);[6]

b.     The Settlement establishes a common fund of $27,500,000, and Notice has

been disseminated to approximately 3 million members of the Settlement Class. Under the

---

[5] The Parties requested a service award of $20,000.  When considering the reasonableness of this request, the court considered the "risk to the plaintiff in commencing suit, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 257 (E.D. Pa. 2011).  Plaintiff contributed significantly to the prosecution of the case—she assisted her counsel in establishing the claim and underwent a lengthy deposition—but the court finds that $20,000 is high in comparison with similar awards within the Third Circuit.  Accordingly, the court will grant Plaintiff a service award of $10,000, which is also on the higher end, but fully deserved given the extent to which Plaintiff participated in this case and assisted her counsel in its prosecution.

[6] The Third Circuit's factors for evaluating the reasonable percentage to award class-action counsel in a common fund case are: (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by Class Members to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, and (8) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.  *Id.*

Settlement, Plaintiff and the Settlement Class will recover between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, when basing it on the cash Settlement Fund alone.  The value of the settlement is actually greater in light of the meaningful injunctive relief to which Bank of America has agreed, but which has not been quantified monetarily.  As the Action has resulted in substantial benefits to Settlement Class Members, this factor weighs in favor of the requested fee award;

c.      As noted above, only one Settlement Class Member has objected to the Settlement;

d.      Litigation of this Action required counsel highly trained in class action law and procedure as well as the specialized banking issues presented here.  Class Counsel possess these attributes, and their participation added great value to the representation of this large Settlement Class.  The record demonstrates that the Action involved a broad range of complex and novel challenges that Class Counsel met at every juncture.  In addition, the court finds that Class Counsel has significant experience in complex class action litigation, including litigation in the financial services area and, more specifically, in consumer class actions concerning bank overdraft fees.  Doc. No. 34, at 2.  Further, considering the potential for this Action to turn into multi-year litigation, Class Counsel's ability to negotiate the instant Settlement at the early stages of this litigation demonstrates their high level of skill and efficiency;

e.      The claims and defenses are complex, and litigating them is both difficult and time consuming.  While this litigation has been ongoing for over two years, recovery by any means other than settlement would likely have required additional years of litigation;

f.      In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee;

g.      Class Counsel spent significant time investigating Plaintiff's claims against Bank of America, researching and developing the legal claims at issue, preparing for mediation, analyzing data, and negotiating the specific terms of the Settlement.  In addition, Class Counsel engaged in an extensive settlement-related investigation;

h.      Finally, the court finds that an award of 33% of the Settlement Fund is consistent with similar awards throughout the Third Circuit;

i.      To assess whether the percentage-of-recovery method produces a reasonable fee, the Third Circuit recommends, but does not require, cross-checking the fee amount under the percentage-of-recovery method against the lodestar method.  Even if such a cross-check is performed, "the lodestar cross-check does not trump the primary reliance on the percentage of the common fund method." *In re Rite Aid Corp. Sec Litig.*, 396 F.3d 294, 307 (3d Cir. 2005);

j.      The collective lodestar for Class Counsel is $1,933,795.95. Accordingly, an award of 33% of the Settlement Fund or $9,075,000 results in a multiplier here of 4.69. Given the nature, complexity, and potential duration of this Action, as detailed above, the risk of non-recovery, the value of the social benefit, and the extraordinary results in light of the obstacles, the court finds that the multiplier is appropriate and reasonable, including when compared to awards in other cases in this court and Circuit;

k.      The court rejects the objection to the fee request by Objector Dawn Weaver. A 33% attorneys' fee request is consistent with other awards in this Circuit, and that amount is warranted here;

19.     The terms of the Settlement Agreement and of this Final Approval Order, including all exhibits thereto, shall be forever binding in all pending and future lawsuits maintained by Plaintiff and all other Settlement Class Members, as well as their family members, heirs, guardians, assigns, executors, administrators, predecessors, and successors;

20.     The Releases, which are set forth in the Settlement Agreement, including in Paragraphs 88 through 90 of the Settlement Agreement, and which are set forth below, are expressly incorporated herein in all respects and are hereby approved.  The Releases are as follows:

a.      As of the Effective Date, Plaintiff and all Settlement Class Members (who did not timely opt-out of the Settlement) (collectively, "Releasors"), and each of their respective executors, representatives, heirs, successors, bankruptcy trustees, guardians, wards, agents and assigns, and all those who claim through them or who assert claims on their behalf shall automatically be deemed to have fully and irrevocably released and forever discharged Bank of America and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively, "Releasees"), of and from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability for any type of relief and statutory or punitive damages predicated on any claim and for actual or statutory damages, punitive damages, restitution or other monetary relief of any and every kind, including, without limitation, those based on any federal, state, or local law, statute, regulation, or common law, including all claims for declaratory or injunctive relief, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which the Class Representative or any

11

Settlement Class Member ever had, now has or may have in the future resulting from, arising out of or in any way, directly or indirectly, relating to (a) any claims that were or could have been alleged in the Complaint or Amended Complaint; or (b) any conduct prior to the date of final settlement approval that was or could have been alleged in the Complaint or Amended Complaint.  For the avoidance of doubt, the Released Claims include, and each Releasor expressly waives and fully, finally and forever settles any claims it may have against Releasees or any of them under California Business and Professions Code § 17200 *et seq.* and similar state laws, which claims are included in and expressly incorporated into this Paragraph;

      b.      Plaintiff and each Settlement Class Member waive and release any and all provisions, rights, and benefits conferred either (a) by section 1542 of the California Civil Code, or (b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to Paragraph 88 hereto.  Section 1542 of the California Civil Code reads:

> **Section 1542. General Release, extent.** A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Plaintiff and each Settlement Class Member may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of Paragraph 88 hereof, but each of those individuals expressly agrees that, upon entry of the Final Judgment, he or she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the claims released pursuant to Paragraph 88 hereof, whether or not concealed or

hidden, without regard to subsequent discovery or existence of such different or additional facts;

      c.     Plaintiff or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or noncontingent claims with respect to all of the matters and conduct described in or subsumed by this Paragraph and Paragraph 88. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases contained in this Paragraph and in Paragraph 88, and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement or never receives a distribution of funds or credits from the Settlement;

21.     Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Approval Order, nor any of its terms and provisions, nor the Judgment to be entered pursuant to this Final Approval Order, nor any of its terms and provisions, shall be deemed to be, or may be used as, an admission of, or evidence of:

      a.     the validity of any claim made by the Plaintiff or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or

b.      any fault or omission of any of the Released Parties, in the Action or in any

proceeding in any court, administrative agency or other tribunal;

22.      In addition to any other defenses Bank of America may have at law, in equity, or

otherwise, to the extent permitted by law, this Final Approval Order may be pleaded as a full and

complete defense to, and may be used as the basis for an injunction against, any action, suit or other

proceeding that may be instituted, prosecuted or attempted in breach of the Settlement Agreement

or the Releases contained therein; and

23.      In the event that this Final Approval Order or the Judgment to be entered pursuant to

this Final Approval Order are changed upon appeal or review in any way not acceptable to Bank of

America after reasonable consultation with Class Counsel, Bank of America shall have the right to

terminate the Settlement pursuant to Section XVI of the Settlement Agreement.

**IT IS FURTHER ORDERED** that the request for judicial notice (Doc. No. 83) is

**GRANTED**.

**IT IS FURTHER ORDERED** that, the court having approved this final settlement, the

Clerk of Court shall mark this case as **CLOSED**.


BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

**EXHIBIT A**

# Requests for Exclusion

| # | First Name | Middle Name | Last Name |
|---|---|---|---|
| 1 | FRANCISCO | A | AGUILAR |
| 2 | JASON | L | ALAN |
| 3 | TROY | A | ALLEN |
| 4 | JOSE | ANTONIO | ALTIERY |
| 5 | CELIA | J | AMADAHY |
| 6 | MALLORY | JO | ARCHIONE |
| 7 | SHARON | | BELOLI |
| 8 | CAROLINE | | BERMUDEZ |
| 9 | VERNONICA | YVONNE | BIANCALANA |
| 10 | VERNONICA | YVONNE | BIANCALANA |
| 11 | DONNA | R | BLANC |
| 12 | ADA | B | BROWN |
| 13 | CHERYL | L | BURGOR |
| 14 | LISA | | BURROUGHS |
| 15 | CORBBLIN | B | BUSH JR |
| 16 | SUZANNE | L | CALAGE |
| 17 | DIEGO | | CRUZ-SAVINON |
| 18 | JOSE | A | DAVIS |
| 19 | CLAVAIRE | | ELANGA |
| 20 | MIGUEL | A | FIGUEROA JR |
| 21 | KATHERINE | MARIE | FUREK |
| 22 | SIRTRYNA | T | GADSBY |
| 23 | SIMON | S | GRAHAM |
| 24 | JENNIFER | | HARTOUNIAN |
| 25 | ELENA | | KERZNER |
| 26 | KYUNGHEE | | KIM |
| 27 | MUSTAFA | H | KUKO |
| 28 | ARMANDO | A | LARIOS |
| 29 | LAURI | | LEMAIRE |
| 30 | RACHEL | MICHELLE | LEWIS |

| # | First Name | Middle Name | Last Name |
|---|---|---|---|
| 31 | KAREN | M | LITTLEJOHN |
| 32 | G | LAYNE | MACHADO |
| 33 | ZINA | M | MEIGS |
| 34 | MINERVE | | MICHEL |
| 35 | KAWTHAR | H | PAHLVAN ZADEH |
| 36 | CLENIO | SILVIO | PEREIRA |
| 37 | BRENDA | L | PICKETT |
| 38 | LUIS | | PINON |
| 39 | KACYE | S | REAVES |
| 40 | EDITH | N | RIVERA |
| 41 | ALEJANDRA | | RIVERA |
| 42 | MARTHA | I | SANCHEZ-MEZA |
| 43 | SCOTT | A | SEIDLITZ |
| 44 | JENNIFER | | SEMPE SUAREZ |
| 45 | CARLOS | | SOLANO |
| 46 | PAVEL | V | TARKO |
| 47 | BETTY | DANIELS | THOMAS |
| 48 | CLAYTON | | WARD |
| 49 | PAUL | B | WINK |